657 So.2d 821 (1994)
CROWN LIFE INSURANCE COMPANY
v.
Jack C. SMITH and Jean B. Smith.
Jack C. SMITH and Jean B. Smith
v.
CROWN LIFE INSURANCE COMPANY.
1930120, 1930162.
Supreme Court of Alabama.
August 5, 1994.
On Application for Rehearing January 13, 1995.
*822 Davis Carr and James W. Lampkin II of Pierce, Carr & Alford, P.C., David C. Hannan, Celia J. Collins and Tracy P. Turner of Johnstone, Adams, Bailey, Gordon & Harris, Mobile, for appellant/cross appellee Crown Life Ins. Co.
William M. Lyon, Jr. of McFadden, Lyon, Willoughby & Rouse, Joseph M. Brown, Jr. and Andrew T. Citrin of Cunningham, Bounds, Yance, Crowder and Brown, Mobile, for appellees/cross-appellants Smith.
INGRAM, Justice.
Jack C. Smith and his wife Jean B. Smith alleged that an agent of Crown Life Insurance Company ("Crown"), Edward C. Land, converted funds from the Smiths' whole life policies issued by Crown and that Crown wantonly ratified Land's conversions after it learned of them. The Smiths sued Land; Land's corporation, Land and Associates, Inc.; and Crown, alleging conversion, wantonness, bad faith, and the tort of outrage. The trial court dismissed the action as to Land and Associates and entered a default judgment against Land. The Smiths' claims against Crown went to trial before a jury. At the Smiths' request, the trial court submitted to the jury only the Smiths' claims of conversion and wantonness. The jury returned a verdict against Crown for $2,000,000 in compensatory damages and $2,000,000 in punitive damages.
The trial court upheld the Smiths' punitive damages award after conducting a review pursuant to Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986), and Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala.1989). However, the trial court conditioned its denial of Crown's motion for a new trial upon the Smiths' accepting a $1,750,000 remittitur of the compensatory damages award, reducing that award to $250,000. The Smiths accepted the remittitur on the condition that Crown not appeal; however, Crown did appeal. The Smiths then cross-appealed from the trial court's order requiring a remittitur.
A jury's verdict is presumed correct and will not be disturbed unless it is plainly erroneous or manifestly unjust. Alpine Bay Resorts, Inc. v. Wyatt, 539 So.2d 160, 162 (Ala.1988). In addition, a judgment based upon a jury verdict and sustained by the denial of a postjudgment motion for a new trial will not be reversed unless it is plainly and palpably wrong. Ashbee v. Brock, 510 So.2d 214 (Ala.1987). Because the jury returned a verdict for the Smiths, any disputed questions of fact must be resolved in their favor, and we must presume that the jury drew from the facts any reasonable inferences necessary to support its verdict. State Farm Auto. Ins. Co. v. Morris, 612 So.2d 440, 443 (Ala.1993). In short, in reviewing a judgment based upon a jury verdict, this Court must review the record in a light most favorable to the appellee. Continental Cas. Ins. Co. v. McDonald, 567 So.2d 1208, 1211 (Ala.1990).
Land, a general insurance agent, had sold the Smiths several life insurance policies issued by General American Life Insurance Company ("General American"). In December 1990, the Smiths learned that Land had taken approximately $13,500 from their insurance policies with General American, while taking over $800,000 from policies held by General American's other insureds. The *823 Alabama Department of Insurance later revoked Land's insurance license; Land subsequently pleaded guilty to federal criminal charges of mail and wire fraud relating to insurance and was sent to prison. General American informed the Smiths of Land's activities and, after an investigation, fully refunded the Smiths' money.
Land had also sold the Smiths several whole life insurance policies issued by Crown. Soon after learning in December 1990 that Land had taken the General American funds, the Smiths requested information from Crown about their Crown insurance policies. They learned that Land, between 1984 and 1988, had obtained over $47,000 from two of their Crown policies. Land had taken the funds from several premium refund checks that had been issued to the Smiths. Further, Land had taken unauthorized loans on the cash values of two of the Smiths' Crown whole life insurance policies. Land received the funds from the refund checks and the unauthorized loans by forging the Smiths' names on the documents, which he then deposited into accounts belonging to Land and Associates, Inc.
Crown, although it was aware that the FBI was investigating Land's illegal activity, did not commence its own investigation of Land's activities until soon after the Smiths sued in June 1991. Crown continued to bill the Smiths for interest charges of several thousands of dollars on the loans that Land had taken against their policies; Crown's mailed billings warned the Smiths that the policies would lapse if the charges were not paid. The Smiths paid the interest charges, which were continuously billed until 1993. Crown did not refund the money taken from the Smiths, including the Smiths' interest payments, until April 1993, approximately one month before trial. The Smiths asserted at trial that Crown's delayed investigation into Land's activities, and its lack of cooperation, demonstrated by its continuing to charge interest after learning of Land's conversions, indicated that Crown had acted wantonly and had ratified Land's conversions.
Crown first contends that the trial court erred in submitting the Smiths' conversion claim to the jury, because, it argues, the funds Land took were not sufficiently identifiable to support a conversion claim.
To establish conversion, one must present proof of a wrongful taking, an illegal assumption of ownership, an illegal use or misuse of another's property, or a wrongful detention or interference with another's property. Covington v. Exxon Co., U.S.A., 551 So.2d 935 (Ala.1989); Gillis v. Benefit Trust Life Ins. Co., 601 So.2d 951 (Ala.1992); Gray v. Liberty National Life Ins. Co., 623 So.2d 1156 (Ala.1993). It is well settled that money may be subject to a conversion claim, where there is an obligation to keep that money intact or to deliver it. 54 Am.Jur.2d Money § 5 (1971); 89 C.J.S. Trover and Conversion § 23 (1955). Generally, an action for conversion of money will not lie unless the money is specific and capable of identification. Greene County Bd. of Education v. Bailey, 586 So.2d 893 (Ala.1991). This Court has stated:
"An action alleging conversion of cash lies only where the money involved is `earmarked' or is specific money capable of identification, e.g., money in a bag, coins or notes that have been entrusted to the defendant's care, or funds that have otherwise been sequestered, and where there is an obligation to keep intact and deliver this specific money rather than to merely deliver a certain sum."
Gray, 623 So.2d at 1160.
Checks, and the property rights represented thereby, may be the subject of a conversion action. Alfa Mut. Ins. Co. v. Veal, 622 So.2d 1292 (Ala.1993). A conversion action may also lie in regard to the cash surrender value of an insurance policy. Hamilton v. Hamilton, 255 Ala. 284, 51 So.2d 13 (1950).
We conclude that the trial court properly submitted the Smiths' conversion claim to the jury. Land forged the Smiths' signatures onto the Smiths' Crown premium refund checks, received the funds represented by those checks, and deposited those funds into his own corporation's accounts. These refund checks were specific, identifiable property that represented funds owed from Crown to the Smiths. Land wrongfully exercised *824 dominion over the checks through his forgeries upon the checks and his retention of the funds; therefore, Land converted these checks. See Alfa Mut. Ins. Co. v. Veal, 622 So.2d 1292 (Ala.1993).
Land also committed conversion when he took unauthorized loans on the cash values of the Smiths' Crown whole life insurance policies. Whole life insurance policies, unlike term life insurance policies, have both an insurance and a savings feature. See R. Keeton and A. Widiss, Insurance Law § 1.5(c)(1) (1988); Couch on Insurance 2d § 1:73 (Rev. ed 1984). The owner of such policies builds up an interest-bearing, specific cash value in the policy, based upon the amount of premiums paid, against which he may borrow. The owner of the policy may also cancel the policy and receive the cash value of the policy. Because of this "cash surrender value" feature, whole life insurance policies involve a substantial element of investment, as well as insurance.
The cash values of the Smiths' whole life insurance policies were diminished by Land's unauthorized loans against them. As he did with the Smiths' premium refund checks, Land forged the Smiths' names onto the loan papers to take the funds. The whole life insurance policies owned by the Smiths had definite, precise cash values. By taking out the loans against these insurance policies, Land was exercising wrongful dominion over money that was specific and capable of identification. This money had "been entrusted to [Crown's] care" by the Smiths in return for life insurance coverage. Gray, supra, at 1160. While, according to Crown, the funds at issue were commingled with those of other Crown insureds, it is without question that the funds available under each policy were specifically identified by the policy number and could have been easily retrieved for the Smiths under the policy number. There is no doubt that Crown, if called upon to do so, could easily identify the specific value of each policy under the policy numbers. The funds taken by Land were "specific money capable of identification," see Greene County Bd. of Education, supra, and, as such, could be the subject of a conversion claim.
We find no merit in Crown's argument that the Smiths "voluntarily" paid interest charges on the loans taken out by Land and that the trial court, therefore, erred in submitting the conversion claim to the jury. The record indicates that Crown mailed the Smiths billing statements warning that the policies would lapse if the Smiths did not make the interest payments. Under the circumstances of this case, the question whether the Smiths made the interest payments voluntarily was a question of fact for the jury to decide.
Crown next argues that the jury's verdict form was inconsistent as a matter of law, because the jury found for the Smiths on one portion of the verdict form but awarded no damages. The verdict form separated the jury's findings into two parts: compensatory and punitive damages for conversion that had allegedly taken place between June 11, 1985, and June 11, 1987; and compensatory and punitive damages for conversion and wantonness that had allegedly taken place after June 11, 1987. The 1987 dates corresponded with the enactment of the punitive damages cap of Ala.Code 1975, § 6-11-21. Even though the trial took place before this Court struck down that statute in Henderson v. Alabama Power Co., 627 So.2d 878 (Ala. 1993), the trial court entered a judgment in accordance with the result of that case. The jury found for the Smiths on the 1985-1987 conversion claim, but awarded them no damages; on the claims seeking damages for conversion and wantonness occurring after June 11, 1987, the jury found for the Smiths and awarded $2,000,000 compensatory damages and $2,000,000 punitive damages.
We find Crown's argument on this issue to be without merit. Crown assented to placing the conversion and wantonness claims together on the verdict form, after the trial court had offered to submit separate forms to the jury. A party that consents to the form of verdict may not attack the form of verdict on appeal. E & S Facilities, Inc. v. Precision Chipper Corp., 565 So.2d 54 (Ala.1990); Rainsville Bank v. Willingham, 485 So.2d 319 (Ala.1986). Assuming that Crown did not waive this issue, we conclude that the verdict form is not, as Crown contends, *825 inconsistent as a matter of law, as was the case in Alabama Power Co. v. Epperson, 585 So.2d 919 (Ala.1991), and Thompson v. Cooper, 551 So.2d 1030 (Ala.1989), upon which Crown relies. In both Epperson and Thompson, the jury found in favor of the plaintiff, but awarded no damages. However, in this case, the jury awarded the Smiths a total of $4,000,000 against Crown on the second portion of its verdict form. Crown was not prejudiced by the jury's failure to assess damages against it on the first portion of the verdict form.
Crown next contends that the trial court erred in failing to give its requested instruction warning the jury against basing an award of damages upon speculation.
In regard to that requested instruction, the record shows that the trial court instructed the jury that its verdict could not be based upon "considerations of bias or prejudice against any party, nor sympathy for any party," and could not "be based in whole or in part on speculation or guess." The refusal of a requested jury charge is not error when the court's oral charge substantially covers the same principles as the requested charge. Cone Builders, Inc. v. Kulesus, 585 So.2d 1284 (Ala.1991). From our thorough review of the trial court's instructions, we conclude that the trial court adequately and correctly instructed the jury. Accordingly, Crown's contentions regarding the trial court's instructions are without merit.

The Smiths' Cross-appeal
The trial court conditioned its denial of Crown's motion for a new trial upon the Smiths' acceptance of a $1,750,000 remittitur of the jury's compensatory damages award, reducing the compensatory damages award to $250,000. The Smiths agreed to accept the remittitur if Crown did not appeal; when Crown appealed from the judgment, the Smiths cross-appealed from the trial court's order requiring a remittitur. The trial court stated the following in its written order regarding the jury's compensatory damages award:
"With respect to compensatory damages, plaintiffs suffered no economic loss other than relatively insignificant interest payments and loss of use of money. Plaintiffs claim that they suffered mental anguish over the disruption and uncertainty concerning their insurance program. No doubt they did; but not two million dollars' worth. The court finds this amount to be excessive. Defendant's motion for a new trial will be granted unless plaintiffs accept remittitur [of] the compensatory award in the amount of $1,750,000, leaving a compensatory award of $250,000."
The trial court, later in the same order, refused to order a remittitur of the jury's $2,000,000 punitive damages award, after reviewing the award pursuant to Hammond, supra, and Green Oil, supra.
The trial court has much discretion in determining whether to grant a new trial and, in that regard, whether to require a remittitur. Fields v. Parker, 361 So.2d 356 (Ala.1978). Given that discretion, the trial court's ruling on a new trial motion is presumed to be correct. Todd v. United Steelworkers of America, 441 So.2d 889 (Ala. 1983); Birmingham Electric Co. v. Thompson, 251 Ala. 465, 37 So.2d 633 (1948).
The trial court did not abuse its discretion in ordering a remittitur of the Smiths' compensatory damages award. The record indicates, as the trial court noted, that the Smiths were not seriously damaged financially as a result of Land's conversions. Further, while the Smiths' testimony before the jury certainly revealed their worry over the status of their life insurance policies, the evidence does not support the $2,000,000 compensatory award given by the jury. The presumption of correctness of a jury's verdict may be overcome by a clear showing that the damages award was excessive. Williston v. Ard, 611 So.2d 274 (Ala.1992). This amount, under these facts, was excessive. Although we recognize that "there is [no] yardstick to measure the amount of recompense which should be awarded for ... mental suffering," Birmingham Electric Co., 251 Ala. at 466, 37 So.2d at 634, we conclude that an award of $250,000 will sufficiently compensate the Smiths for their mental suffering and that the trial court, therefore, properly conditioned *826 the denial of the new trial upon a remittitur of $1,750,000.
The judgment is affirmed.
1930120AFFIRMED.
1930162AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES and STEAGALL, JJ., concur.

On Application for Rehearing
INGRAM, Justice
APPLICATION FOR REHEARING OVERRULED.
SHORES, HOUSTON, STEAGALL and COOK, JJ., concur.
MADDOX, J., dissents
MADDOX, Justice (dissenting).
I would grant the application for rehearing so that this Court could specifically determine whether the opinion in this case conflicts with Green Tree Acceptance, Inc. v. Tunstall, 645 So.2d 1384 (Ala.1994).