679 So.2d 658 (1996)
Martin P. McCANN, M.D.
v.
Frances Louise LEE, individually and as executrix of the Estate of Woodrow Wilson Lee, deceased.
Frances Louise LEE, as executrix of the Estate of Woodrow Wilson Lee, deceased
v.
Martin P. McCANN, M.D.
1940991, 1941102.
Supreme Court of Alabama.
May 31, 1996.
Rehearing Denied July 19, 1996.
Thomas H. Keene, Ronald G. Davenport and William H. Webster of Rushton, Stakely, Johnston, & Garrett, P.A., Montgomery, for Dr. McCann.
Sam E. Loftin and W. Banks Herndon of Loftin, Herndon & Loftin, Phenix City, for Ms. Lee.
*659 INGRAM, Justice.
Woodrow Wilson Lee sued Dr. Martin P. McCann, a pathologist, alleging that Dr. McCann had negligently diagnosed him with cancer; his wife, Frances Louise Lee, sued Dr. McCann for damages for loss of consortium. Mr. Lee died before trial, and Mrs. Lee, as executrix of her husband's estate, was substituted as plaintiff as to the claim Mr. Lee had filed. The complaint was amended to allege also that Dr. McCann had wrongfully caused the death of Mr. Lee. All three claims against Dr. McCann went to trial. The jury awarded the plaintiff $1,000,000 in compensatory damages on the negligent diagnosis claim and $1,000,000 in compensatory damages on the loss of consortium claim. The jury returned a verdict in favor of Dr. McCann on the wrongful death claim.
Dr. McCann moved for a judgment notwithstanding the verdict, a new trial, or a remittitur of the damages, contending that the damages awarded were excessive. The trial court agreed in part and conditioned its denial of Dr. McCann's motion for a new trial upon Mrs. Lee's acceptance of a $750,000 remittitur of the compensatory damages award on the loss of consortium claim, reducing that award to $250,000. Mrs. Lee accepted the remittitur on the condition that Dr. McCann not appeal; however, Dr. McCann did appeal. Mrs. Lee then cross appealed from the order requiring a remittitur.
A jury's verdict is presumed correct and will not be disturbed unless it is plainly erroneous or manifestly unjust. Crown Life Ins. Co. v. Smith, 657 So.2d 821 (Ala.1994); Alpine Bay Resorts, Inc. v. Wyatt, 539 So.2d 160, 162 (Ala.1988). In addition, a judgment based upon a jury verdict and sustained by the denial of a postjudgment motion for a new trial will not be reversed unless it is plainly and palpably wrong. Ashbee v. Brock, 510 So.2d 214 (Ala. 1987). Because the jury returned a verdict for the plaintiff, any disputed questions of fact must be resolved in her favor, and we must presume that the jury drew from the facts any reasonable inferences necessary to support its verdict. State Farm Auto. Ins. Co. v. Morris, 612 So.2d 440, 443 (Ala.1993). In short, in reviewing a judgment based upon a jury verdict, this Court must review the record in a light most favorable to the appellee. Continental Cas. Ins. Co. v. McDonald, 567 So.2d 1208, 1211 (Ala.1990).
In May 1991, Woodrow Lee, a 78-year-old man, was admitted to Phenix Medical Park Hospital with pneumonia. While there, he experienced some rectal bleeding. His physician called in Dr. Howard Weldon, a surgeon, to determine the cause of the bleeding. Dr. Weldon performed a rectal examination, and during that exam he felt a "questionable mass" inside Mr. Lee's rectum. While performing a colonoscopic examination, Dr. Weldon observed a "cauliflower-appearing" mass on the wall of the rectum. Dr. Weldon suspected cancer and took biopsies of the mass. On May 31, 1991, the biopsy material was submitted to Dr. McCann, the pathologist working at the hospital. After examining the tissue specimen submitted, Dr. McCann issued a report with a diagnosis of "mucin producing adenocarcinoma, biopsies of rectum." Specifically, Dr. McCann's diagnosis was that Mr. Lee had a malignant tumor in his rectum. On that same date, Dr. McCann left for a vacation. Based upon the report issued by Dr. McCann, Dr. Weldon told Mr. Lee that he had cancer and needed surgery. Dr. Weldon explained to Mr. Lee that this surgery would require the complete removal of his rectum, that he would no longer have any rectal function, and that he would have to defecate into a bag through a colostomy. Dr. Weldon explained the possible side effects of the surgery, including impotence and sexual dysfunction. Dr. Weldon performed the surgery on June 3, 1991. Dr. Weldon sent the tissue that was removed to the pathology department for further examination. Dr. R.C. Hamill, filling in for Dr. McCann, examined the specimens. However, he did not issue a pathology report. Dr. Weldon contacted Dr. Hamill to determine why he had not received a pathology report. Dr. Hamill explained that he was unable to find any cancer and wanted to wait for Dr. McCann to return from vacation before releasing a final report. After Dr. McCann returned, he also examined the tissue and found no evidence of cancer. Dr. McCann's *660 final diagnosis was an "atypical mucus hyperplasia." According to Dr. Weldon, had he known that there was no cancer, he would not have performed such radical surgery, but would have excised only the area of the mass, not the entire rectum.
On appeal, Dr. McCann contends that the jury's award of $1,000,000 in compensatory damages on the negligence claim and the compensatory damages award on the loss of consortium claim, even after it was remitted to $250,000, are excessive.
Dr. McCann argues that because compensatory damages are intended only to reimburse the plaintiff, the evidence in this case does not support the awards, because (1) there was no evidence of any medical bills, out-of-pocket expenses, lost earnings, or loss of earning capacity resulting from the alleged negligence; and (2) Mr. Lee lived only about eight months after the surgery, dying then of unrelated causes; Dr. McCann says that any pain, depression, or embarrassment Mr. Lee suffered was therefore insufficient to substantiate such an award.
The plaintiff claimed damages for Mr. Lee's mental anguish and emotional distress. We recognize that those are not items for which a precise amount of damages can be assessed. In considering whether a jury verdict awarding compensatory damages is excessive, we must view the evidence from the injured party's perspective and determine what the evidence supports in terms of the injured party's suffering. Foster v. Life Ins. Co. of Georgia, 656 So.2d 333 (Ala.1994). In this case, evidence was presented regarding Mr. Lee's mental anguish and emotional distress. There was testimony that before the surgery the Lees had led an active life and Mr. Lee had been in good health for a man his age. After the surgery, he became depressed because of the need for the colostomy bag. His doctor prescribed anti-depressant medication to help alleviate his depression. Mr. Lee rarely left his home after the surgery because the colostomy bag on occasions came loose, smelled bad, and made noises caused by gas being emitted from the opening of the bag. After the surgery, Mr. Lee was impotent. Evidence indicated that Mr. Lee's mental anguish and emotional distress over the unnecessary surgery continued until his death approximately eight months later.
This Court has noted:
"`[T]here is no yardstick by which compensatory damages for pain and mental suffering can be measured, and the ascertainment of the amount the plaintiff was due as compensation for these elements of damage must of necessity be left to the sound discretion of the jury, subject only to correction by the court for clear abuse or passionate exercise.'"
Industrial Chemical & Fiberglass Corp. v. Chandler, 547 So.2d 812, 820 (Ala.1988), quoting W.S. Fowler Rental Equipment Co. v. Skipper, 276 Ala. 593, 603, 165 So.2d 375 (1963).
We hold that the trial court did not abuse its discretion in refusing to order a remittitur of the $1,000,000 compensatory damages award on the negligent-diagnosis claim and that it did not abuse its discretion in ordering a remittitur of $750,000 on the $1,000,000 award for loss of consortium, reducing that award to $250,000. The evidence indicated that Mr. Lee suffered severe mental anguish and depression, and that evidence was sufficient to support the jury's award on the negligent-diagnosis claim. While we cannot say that the trial court abused its discretion in not ordering a remittitur of that award, we agree with the trial court that the damages award for the loss of consortium claim was excessive. Mrs. Lee's evidence of mental anguish resulting from the loss of consortium was not sufficient to support a compensatory damages award equal to the award on the negligent-diagnosis claim. Therefore, the trial court properly ordered the remittitur.
The judgment is affirmed.
1940991AFFIRMED.
1941102AFFIRMED.
MADDOX, ALMON, KENNEDY, and BUTTS, JJ., concur.
HOUSTON, J., concurs specially.
HOOPER, C.J., dissents.
*661 HOUSTON, Justice (concurring specially).
In Duck Head Apparel Co. v. Hoots, 659 So.2d 897, 906-08 (Ala.1995), this Court upheld awards of $2,000,000; $1,000,000; and $500,000 for mental anguish to three men in a business fraud case. When compared to the mental anguish in Duck Head, I cannot hold that Mr. Lee's mental anguish that resulted from the unnecessary removal of his rectum resulting in the loss of rectal function and impotency and sexual dysfunction for the last eight months of his life is excessive.
HOOPER, Chief Justice (dissenting).
I must respectfully dissent.
The jury found that Dr. McCann had acted negligently, not that he intentionally or willfully caused the injury, and it awarded $2,000,000 in compensatory damages: $1,000,000 in compensatory damages to Mr. Lee's estate, and $1,000,000 to Ms. Lee for loss of consortium. The trial judge ordered a remittitur of the loss of consortium award to $250,000. There were no punitive damages awarded in this case; the damages of $2,000,000, reduced to $1,250,000, were intended solely to "compensate" Ms. Lee and to compensate Mr. Lee's estate for the loss or injury Mr. Lee suffered during the eight months he lived after the negligent surgery.
No evidence was produced regarding medical bills, out-of-pocket expenses, lost earnings, or loss of earning capacity, and no evidence indicated a wrongful death. However, evidence was produced to indicate that after the surgery Mr. Lee gained weight, appeared stronger, worked in his yard, and did not find it necessary to wear his colostomy belt. Mr. Lee had been retired for some years, and after the surgery he was not precluded from working or otherwise earning wages. Mr. Lee became sick on his 79th birthday and never recovered. He died from unrelated causes 8 months after the surgery.
It is clear that Dr. McCann was negligent. It is also clear that Mr. Lee lost the lower portion of his colon as a result of Dr. McCann's negligence. However, the jury awarded the plaintiff $1,000,000 for her husband's few days of pain and eight months of depression and embarrassment.
The jury demonstrated an inability to properly judge the law and the facts when it awarded Ms. Lee $1,000,000 for loss of consortium. This award was entirely intended to compensate Ms. Lee for the eight months of lost consortiumthe loss of conjugal fellowship, company, society, co-operation, affection, and aid in every conjugal relation.
I do not discount this statement by the majority:
"`[T]here is no yardstick by which compensatory damages for pain and mental suffering can be measured, and the ascertainment of the amount the plaintiff was due as compensation for these elements of damage must of necessity be left to the sound discretion of the jury, subject only to correction by the court for clear abuse or passionate exercise.'"
679 So.2d at 660 (quoting W.S. Fowler Rental Equipment Co. v. Skipper, 276 Ala. 593, 603, 165 So.2d 375 (1963)).
While this Court does not have "a yardstick" by which to measure compensatory damages for pain and mental suffering, we do have common sense and the common law. Assume that the jury had said that Ms. Lee was entitled to $100 million for pain and suffering in this case. Would this Court say: "[T]here is no yardstick by which compensatory damages for pain and mental suffering can be measured; therefore, we will not disturb the jury's judgment?" I sincerely hope not. Instead, the majority would probably look a little more closely at the second clause of the Skipper test: "[The jury's verdict is] subject only to correction by the court for clear abuse or passionate exercise." How would this Court determine whether the jury has committed "a clear abuse or passionate exercise?" I submit that this Court would consider the common law and common sense.
If the Skipper test is good enough to be quoted for the "no yardstick" proposition, then this Court should also use that case as precedent in deciding whether the compensatory damages for pain and mental suffering are proper in this case. In Skipper, the plaintiff sued for damages for personal injuries he sustained when a pickup truck in which he was riding collided with the boom of *662 a dragline crane that had been left across an open ditch on a highway that was under construction by the defendant.
The plaintiff in Skipper lost substantial use of his right hand for the rest of his life, and he could no longer work in his trade, which required the use of his right hand. Moreover, the plaintiff was in a hospital for nine days and was unable to do any sort of work for six months. In addition, he incurred hospital and doctors' bills, and, finally, he sustained painful injury not only to his hand but over the rest of his body.
In light of all that evidence in Skipper, this Court held that an award of $10,000 was proper to compensate the plaintiff for his medical expenses, future lost wages, permanent partial loss of use of his right hand, and pain and mental suffering. This Court does not have a "yardstick," but we do have precedent.
I realize that the jury verdict in Skipper was returned in 1961, when $10,000 was worth more than it was in 1994, when the jury in our case made its award against Dr. McCann. However, the 1994 value of $10,000 in 1961 dollars is still not close to the value of $1,000,000 in 1994 dollars. Moreover, the $10,000 award in Skipper, unlike the award in today's case, was not only intended as compensation for pain and mental suffering, but also as compensation for Skipper's medical expenses, future lost wages, and permanent partial loss of use of his right hand. Therefore, the compensation awarded for pain and suffering in Skipper was less than $10,000, even in 1961 dollars.
Skipper shows how far this Court has gone in 30 years. Relatively mild pain and suffering used to be worth less than $10,000, and now it is worth $1,000,000. Has the quality of life increased exponentially in the last 30 years to the extent that pain and suffering that used to be worth less than $10,000 is now worth $1,000,000? The discrepancy in awards cannot be explained by the assertion that the injury or harm was different. All items of injury or harm are as different as the specific facts of each case; however, that should not prevent this Court from using precedent and common law to determine the reasonableness of awards to compensate for them. It is true that this Court does not have a yardstick with which to measure pain and mental suffering, but it is our duty as Justices to adhere to the common law and to use our common sense to step in when juries commit "clear abuse or passionate exercise."
I have a great deal of sympathy for the suffering the Lees went through during Mr. Lee's last eight months. It seems to me that the natural human reaction to this type of medical problem is an emotional revulsion. However, the suffering the Lees endured was limited to eight months. I believe that the jury engaged in "passionate exercise" when it awarded $1,000,000 for Mr. Lee's suffering and $1,000,000 for Ms. Lee's loss of consortium. I believe that the $1,000,000 award to the estate is too high, and that the award for loss of consortium, even after the remittitur, is still too high.
The majority of this Court, in adhering to the principle that "[t]here is no yardstick by which compensatory damages for pain and mental suffering can be measured," has abandoned its duty to follow precedent and to use its common sense to prevent a jury from committing "clear abuse or passionate exercise." Therefore, I must dissent.