BRYAN, Judge.
 

 Linda Pike, the defendant below, appeals from a summary judgment in favor of the plaintiff, Brenda Reed.
 
 [1]
 
 We affirm.
 

 Pike and Reed are sisters. In 1989, Reed acquired title to a house located on Highway 69 in Oakman (“the house”) and took out a policy of insurance covering the house and the contents of the house. Reed lived in the house until September 1993. In September 1993, Reed moved out of the house, and the mother of Reed and Pike (“the mother”) began living in the house. After the mother began living in the house, some of the contents of the house (“the contents”) were owned by the mother and some were owned by Reed.
 

 In 2004, Reed executed a deed that made herself, her husband, and the mother the joint owners of the house. In early August 2005, a fire (“the fire”) damaged the house and the contents and injured the mother. At the time of the fire, Reed had a policy of homeowners’ insurance that had
 
 *255
 
 been issued by Alfa Mutual General Insurance Company (“Alfa”). Although the mother had been named as an insured on at least one previous policy that Reed had obtained on the house and the contents, Reed had instructed the insurance company to take the mother’s name off of the policy sometime before the August 2005 fire. Hence, the mother’s interest in the house and the contents was not insured when the fire occurred in August 2005.
 

 Reed was living in Iowa when the fire occurred and, due to various health problems, was unable to travel to Alabama to make an insurance claim based on the damage caused by the fire. Accordingly, on August 25, 2005, Reed executed a power of attorney (“the power of attorney”), which stated, in pertinent part:
 

 “I, Brenda Morris Reed, hereby give Linda R. Pike of ... Huntsville, Alabama, my sister, and/or Johnnie P. Simpson of ... Jasper, Alabama, my brother, full Power of Attorney to represent me in all matters relating to my property located [on] Highway 69 [in] Oakman, Alabama 35579.”
 

 Reed gave a copy of the power of attorney to Alfa. Reed and the mother provided Pike with information regarding the contents, and Pike used this information to prepare an inventory of the contents that were damaged in the fire (“the inventory”). The inventory listed both items that were owned by Reed and items that were owned by the mother. Pike submitted a claim to Alfa under the contents coverage of the policy and submitted the inventory as part of the claim.
 

 On December 5, 2005, Alfa issued a check payable to Reed in the amount of $41,698 (“the Alfa check”) in payment of the claim for damage to the contents and sent it to Pike. Pike deposited the Alfa check into her and her husband’s joint checking account (“the Pikes’ account”) instead of delivering it to Reed. Pike’s husband and the mother assigned values to the individual items listed on the inventory Pike had submitted to Alfa with the contents claim. Pike’s husband and the mother assigned a total value of $15,712 to the items owned by Reed and a total value of $25,986 to the items owned by the mother. Pike wrote Reed a check in the amount of $15,712 and withheld $25,986 of the proceeds of the Alfa check, which she spent for the benefit of the mother.
 

 On February 2, 2006, Reed sued Pike, alleging a claim of conversion. Answering the complaint, Pike denied liability. Subsequently, Pike moved the trial court for a summary judgment. Among other things, Pike supported her summary-judgment motion with her affidavit, which stated, in pertinent part:
 

 “2. ALFA sent a check to me in the amount of $41,698 for property destroyed in the fire. I deposited this check from ALFA into my and my husband’s regular joint checking account at AmSouth Bank.
 

 “8. The insurance proceeds were not placed in a special account or segregated or kept separate in any way from the other funds contained in my and my husband’s joint checking account. The insurance money from ALFA was commingled with all of the other money in this account.
 

 “4. When Brenda Reed failed to give me a clear answer as to how she intended to handle the issue of the belongings in the house, I became concerned that Brenda Reed would not pay our mother, Mrs. Morris, for the items that she had lost in the fire.
 

 “5. The insurance proceeds for personal property that were not paid to Brenda Reed have been used exclusively for the use, support and benefit of my mother, Mrs. Morris. These proceeds
 
 *256
 
 were not kept in any special or segregated account, but remained in my and my husband’s regular joint checking account at AmSouth Bank along with our other funds.”
 

 Pike asserted two grounds for her summary-judgment motion. First, she asserted that Reed could not establish one of the essential elements of a conversion claim, 1.e., that Pike’s withholding of $25,986 in proceeds of the Alfa check was wrongful, because, Pike said, Reed had testified that she would have allowed her mother to have as much of the proceeds of the Alfa check as she wanted. Second, Pike asserted that she could not be liable for conversion because the money she had allegedly converted was not “specific money capable of identification,” which is a necessary condition of establishing a claim of conversion with respect to money.
 

 Reed filed a cross-motion for a partial summary judgment with respect to liability on the ground that Pike had converted the Alfa check because, Reed said, the power of attorney did not authorize Pike to deposit the Alfa check into the Pikes’ account. In opposition to Pike’s summary-judgment motion, Reed asserted (1) that her willingness to give the mother as much of the proceeds of the Alfa check as the mother wanted did not authorize Pike to deposit the Alfa check into the Pikes’ account and (2) that the Alfa check did indeed constitute specific money that was capable of identification for purposes of a conversion claim.
 

 In opposition to Reed’s partial-summary-judgment motion, Pike asserted that the language of the power of attorney was broad enough to authorize Pike to deposit the Alfa check in the Pikes’ account and to determine how the proceeds should be apportioned between Reed and the mother. In addition, she asserted that Reed was not entitled to a partial summary judgment because, she said, genuine issues of material fact existed; specifically, she argued (1) that Reed had testified that she had executed a document revoking the power of attorney before Pike deposited the check into the Pikes’ account but had not produced the original of that document and, that, therefore, a genuine issue of material fact existed regarding whether Reed had validly revoked the power of attorney and (2) that issues of material fact existed regarding which of the contents belonged to Reed and which belonged to the mother.
 

 Following a hearing, the trial court entered an order denying Pike’s summary-judgment motion and granting Reed’s partial-summary-judgment motion. Pike filed two appeals from the partial summary judgment in favor of Reed.
 
 [2]
 
 We dismissed those two appeals on the ground that they were appeals from a nonfinal judgment.
 
 See Pike v. Reed,
 
 3 So.3d 201 (Ala.Civ.App.2008). Following our dismissal of those two appeals, the trial court entered a final summary judgment in favor of Reed that, as amended, awarded Reed $26,604 and denied all other relief requested by Reed. Pike filed a postjudgment motion, which was denied by operation of law pursuant to Rule 59.1, Ala. R. Civ. P. Pike then perfected the appeal now before us.
 

 “ ‘We review a summary judgment de novo.’
 
 Potter v. First Real Estate Co.,
 
 844 So.2d 540, 545 (Ala.2002) (citation omitted). ‘Summary judgment is appropriate only when “there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.” ’
 
 Ex parte Rizk,
 
 791 So.2d 911, 912 (Ala.2000) (citations omitted).
 

 
 *257
 
 “ ‘In determining whether the non-movant has created a genuine issue of material fact, we apply the “substantial-evidence rule” — evidence, to create a genuine issue of material fact, must be “substantial.” § 12-21-12(a), Ala.Code 1975. “Substantial evidence” is defined as “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.”
 
 West v. Founders Life
 
 Assurance
 
 Co. of Florida,
 
 547 So.2d 870, 871 (Ala.1989).’
 

 “Callens v. Jefferson County Nursing Home,
 
 769 So.2d 273, 278-79 (Ala.2000) (footnote omitted). In deciding a motion for a summary judgment, or in reviewing a summary judgment, the court must accept the tendencies of the evidence most favorable to the nonmoving party and must resolve all reasonable factual doubts in favor of the nonmoving party.
 
 Bruce v. Cole,
 
 854 So.2d 47 (Ala.2003), and
 
 Pitney Bowes, Inc. v. Berney Office Solutions,
 
 823 So.2d 659 (Ala.2001).
 
 See Ex parte Helms,
 
 873 So.2d 1139 (Ala.2003), and
 
 Willis v. Parker,
 
 814 So.2d 857 (Ala.2001).”
 

 Hollis v. City of Brighton,
 
 885 So.2d 135, 140 (Ala.2004).
 

 Pike first argues that the trial court erred in entering a summary judgment in favor of Reed because, Pike says, the money she allegedly converted was not “specific money capable of identification” and, therefore, could not be the subject of a claim of conversion. Pike directs our attention to the fact that, after she deposited the Alfa check into the Pikes’ joint account, the proceeds of the Alfa check were commingled with funds belonging to the Pikes and were no longer capable of being identified. Therefore, Pike says, she could not be liable for conversion when she withheld $25,986 of the proceeds of the Alfa check from Reed because those withheld proceeds had become commingled in the Pikes’ account and, consequently, were no longer “specific money capable of identification.”
 

 Reed, on the other hand, argues that the conversion occurred when Pike exercised dominion over the Alfa check by depositing it into the Pikes’ account without Reed’s authorization. Thus, according to Reed’s analysis, Pike converted the entire Alfa check but mitigated the amount of damages that could be assessed against her by later giving Reed $15,712 of the proceeds of the Alfa check. Reed points out that the Alabama Supreme Court has held that a check such as the Alfa check constitutes specific money that is capable of being identified for purposes of a conversion claim.
 
 See Crown Life Ins. Co. v. Smith,
 
 657 So.2d 821 (Ala.1994).
 

 In
 
 Crown Life,
 
 Edward C. Land, a general insurance agent, had sold Jack C. Smith and his wife, Jean B. Smith, several whole-life policies issued by Crown Life Insurance Company (“Crown Life”). The Smiths subsequently learned that Land had wrongfully taken money that belonged to them by forging their endorsements on Crown Life checks made payable to them and depositing those checks into bank accounts Land controlled. The Smiths then sued Land and Crown Life, alleging, among other things, claims of conversion and wantonness. The trial court entered a default judgment against Land, and the Smiths’ claims against Crown Life proceeded to trial before a jury. At the request of the Smiths, the trial court submitted to the jury only the Smiths’ claims of conversion and wantonness. The jury returned a verdict against Crown Life, and the trial court entered a judgment on the verdict; Crown Life appealed to the supreme court. On appeal, Crown Life ar
 
 *258
 
 gued, among other things, that the trial court had erred in submitting the conversion claim to the jury because, Crown Life said, the funds Land had taken were not sufficiently identifiable to support a conversion claim. Rejecting this argument, the supreme court stated:
 

 “To establish conversion, one must present proof of a wrongful taking, an illegal assumption of ownership, an illegal use or misuse of another’s property, or a wrongful detention or interference with another’s property.
 
 Covington v. Exxon Co., U.S.A.,
 
 551 So.2d 985 (Ala.1989);
 
 Gillis v. Benefit Trust Life Ins. Co.,
 
 601 So.2d 951 (Ala.1992);
 
 Gray v. Liberty National Life Ins. Co.,
 
 623 So.2d 1156 (Ala.1993). It is well settled that money may be subject to a conversion claim, where there is an obligation to keep that money intact or to deliver it. 54 Am.Jur.2d
 
 Money
 
 § 5 (1971); 89 C.J.S.
 
 Trover and Conversion
 
 § 23 (1955). Generally, an action for conversion of money will not lie unless the money is specific and capable of identification.
 
 Greene County Bd. of Education v. Bailey,
 
 586 So.2d 893 (Ala.1991). This Court has stated:
 

 “ ‘An action alleging conversion of cash lies only where the money involved is “earmarked” or is specific money capable of identification, e.g., money in a bag, coins or notes that have been entrusted to the defendant’s care, or funds that have otherwise been sequestered, and where there is an obligation to keep intact and deliver this specific money rather than to merely deliver a certain sum.’
 

 “Gray,
 
 623 So.2d at 1160.
 

 “Checks, and the property rights represented thereby, may be the subject of a conversion action. Alfa Mut. Ins. Co. v. Veal,
 
 622 So.2d 1292 (Ala.1993)....
 

 “We conclude that the trial court properly submitted the Smiths’ conversion claim to the jury.
 
 Land forged the Smiths’ signatures onto the Smiths’ Crown premium refund checks, received the funds represented by those checks, and deposited those funds into his own corporation’s accounts.
 
 These refund checks were specific, identifiable property that represented funds owed from Crown to the Smiths. Land wrongfully exercised dominion over the checks through his forgeries upon the checks and his retention of the funds; therefore, Land converted these checks.
 
 See
 
 Alfa Mut. Ins. Co. v. Veal,
 
 622 So.2d 1292 (Ala.1993).”
 

 657 So.2d at 823-24 (emphasis added).
 

 In the case now before us, although the power of attorney granted Pike “full Power of Attorney to represent [Reed] in all matters relating to [Reed’s] property located [on] Highway 69 [in] Oakman, Alabama 35579,” it did not expressly grant her the authority to deposit the Alfa check into the Pikes’ account. The absence from the power of attorney of a provision expressly granting Pike such authority appears to support Reed’s argument that a conversion occurred when Pike deposited the Alfa check into the Pikes’ account.
 

 Pike, however, argues that the holding of a plurality of the Alabama Supreme Court in
 
 Miller v. Jackson Hospital and Clinic,
 
 776 So.2d 122, 124-25 (Ala.2000), indicates that the absence of a provision granting her the express authority to deposit the Alfa check into the Pikes’ account is immaterial. In
 
 Miller,
 
 Roy Lee Miller (“Roy Lee”), while hospitalized at Jackson Hospital, suffered severe burns. Subsequently, Roy Lee executed a durable power of attorney that granted his uncle, Charles Miller (“Charles”), the power, among other things, to “‘institute, prosecute, defend, compromise, arbitrate and
 
 *259
 
 dispose of legal, equitable, or administrative hearings, actions, suits, attachments, arrests, distresses, or other proceedings, or otherwise engage in litigation in connection with any legal or equitable matters.’ ”
 
 Id.
 
 at 125 (emphasis omitted). Three days before the statute of limitations would have run on Roy Lee’s personal-injury claim arising out of his burns, Charles filed a medical-malpractice action captioned “‘Charles Miller, on behalf of Roy Lee Miller v. Jackson Hospital and Clinic, Ra-ghu Mukkamala, M.D., Glenn Yates, M.D., and Primary Care Internists of Montgomery.’ ”
 
 Id.
 
 at 123. The complaint alleged that negligence on the part of the defendants had caused Roy Lee’s injuries. The defendants moved the trial court for a summary judgment on the ground that Charles was not the real party in interest. After the statute of limitations had run, Charles moved for leave to amend the complaint to add Roy Lee as a named plaintiff. However, the trial court granted the defendants’ summary-judgment motion on the ground that Charles was not the real party in interest; the trial court concluded, among other things, that Charles did not have authority to sue on behalf of Roy Lee because the durable power of attorney executed by Roy Lee did not expressly grant Charles authority to file a personal-injury action on behalf of Roy Lee. After the trial court denied his post-judgment motion challenging the summary judgment in favor of the defendants, Charles appealed to the supreme court.
 

 On appeal, a plurality of the supreme court held, among other things, that the trial court had erred in concluding that the power of attorney did not authorize Charles to file a personal-injury action on behalf of Roy Lee. In pertinent part, the opinion stated:
 

 “The trial court held that the power of attorney gave Charles no authority to sue on behalf of Roy Lee because, it found, the power to file a personal-injury action was not specifically stated within the powers described in the document. In support of this conclusion, the trial court cited
 
 Lamb v. Scott,
 
 643 So.2d 972 (Ala.1994), for the proposition that the authority granted through a power of attorney is to be strictly construed and restricted to those powers expressly granted therein.
 
 Id.
 
 at 973. The trial court reasoned that, because of its want of specificity, the power of attorney gave Charles no power to bring a personal-injury action on behalf of Roy Lee.
 

 “We disagree with this conclusion and, in so doing, distinguish
 
 Lamb.
 
 In
 
 Lamb,
 
 a mother gave a durable power of attorney to her oldest daughter, authorizing the daughter to manage her affairs. A year later, the mother executed a will leaving all her property, including a farm, to her two daughters and her stepson, in equal portions. The oldest daughter, purporting to act pursuant to the power of attorney, conveyed the farm to herself and her sister, to the exclusion of her stepbrother. This Court held: ‘One who accepts a power of attorney covenants to use the power for the sole benefit of the one conferring the power and to use it in a manner consistent with the purposes of the agency relationship created by the power of attorney.’
 
 Lamb,
 
 643 So.2d at 974. ‘The principal-agency relationship is fiduciary in nature and imposes upon the agent a duty of loyalty, good faith, and fair dealing.’
 
 Sevigny v. New South Fed. Sav. & Loan Ass’n,
 
 586 So.2d 884, 887 (Ala.1991).
 
 In Myers v. Ellison,
 
 249 Ala. 367, 369, 31 So.2d 353, 355 (1947), this Court stated:
 

 “‘An agent sustains a position of trust toward his principal and in all transactions affecting the subject of his agency, the law dictates that he
 
 *260
 
 must act in the utmost good faith and must make known to his principal ... all material facts within his knowledge which in any way affect the transaction and subject matter of his agency.
 

 “ ‘The law sedulously regards this principle and acts of an agent which tend to violate this fiduciary obligation are prima facie voidable, and are considered, in law, as “frauds upon confidence bestowed.” ’
 

 “(Citations omitted.)
 

 “The situation presented by
 
 Lamb
 
 involved self-dealing. This Court held that in order to act against the intent of the donee as expressed in her will, the attorney-in-fact had to have the express authority to do so. 643 So.2d at 973. In other words, this present case is distinguishable from
 
 Lamb.
 
 The power of attorney in
 
 Lamb
 
 made no express grant of authority to engage in self-dealing, and the self-dealing appeared to go against the true intent of the donee. See, also,
 
 Hall v. Cosby,
 
 288 Ala. 191, 258 So.2d 897 (1972), and
 
 Dillard v. Gill,
 
 231 Ala. 662, 166 So. 430 (1936) (holding that authority to self-deal must be specifically granted).
 

 “Roy Lee vested Charles with the authority to ‘institute, prosecute, defend, compromise, arbitrate and dispose of legal, equitable, or administrative hearings, actions, suits, attachments, arrests, distresses, or other proceedings, or otherwise engage in litigation in connection with
 
 any
 
 legal or equitable matters.’ (Emphasis added.) Charles’s exercise of the power by filing an action for the benefit of Roy Lee did not involve self-dealing. To force the donor to predict the future and to list every cause of action or legal proceeding that might become necessary in the months or years after the execution of the power of attorney, even in instances where there is no self-dealing, lest a court later hold the power of attorney ineffective, would frustrate the donor’s purpose in executing the instrument. We decline the defendants’ request to impose the requirement of specificity even in instances where there has been no self-dealing. To do so would unnecessarily inhibit the utility of a durable power of attorney.”
 

 776 So.2d at 124-25.
 

 Miller
 
 is distinguishable from the case now before us because, in
 
 Miller,
 
 Charles was acting in accordance with the interest and wishes of Roy Lee whereas, in the case now before us, Pike was acting contrary to the interest and wishes of Reed. Because Pike was acting contrary to the interest and wishes of Reed in depositing the Alfa check into the Pikes’ account, the case now before us is analogous to
 
 Lamb v. Scott,
 
 643 So.2d 972 (Ala.1994), rather than
 
 Miller.
 
 Accordingly, we conclude that Pike’s depositing the Alfa check into the Pikes’ account was not authorized by the power of attorney because the power of attorney did not expressly authorize it.
 
 See Lamb.
 
 Because Pike’s depositing the Alfa check into the Pikes’ account was not authorized by the power of attorney, it constituted a wrongful exercise of dominion over the Alfa check. Because checks can constitute specific money capable of identification and, therefore, will support a conversion claim,
 
 see Crown Life,
 
 supra, we find no merit in Pike’s argument that the money Reed claims Pike converted was not specific money capable of identification for purposes of a conversion claim.
 

 Pike also argues that she did not commit the tort of conversion because, she says, her withholding $25,986 of the proceeds of the Alfa check was not wrongful because, she says, she spent those proceeds for the exclusive benefit of the mother and Reed herself testified that she would have allowed the mother to have as much of the
 
 *261
 
 proceeds of the Alfa check as she wanted if Pike had delivered the Alfa check to Reed. However, this argument is unavailing. The tort of conversion occurred when Pike wrongfully deposited the Alfa check into the Pikes’ account without Reed’s authorization. Although Pike’s subsequent use of the $25,986 for the benefit of the mother might have constituted mitigation that would reduce the amount of the damages that could be assessed against Pike for the conversion, it did not constitute a complete defense to Reed’s conversion claim,
 
 see Plummer v. Hardison,
 
 6 Ala.App. 525, 535, 60 So. 502, 505 (1912) (“[I]t has ever been the law that when property has been wrongfully converted, and after such conversion such property again comes into the possession of its owner, this fact may be shown by the wrongdoer, if the owner of the property brings an action in trover against him for such conversion, not as a
 
 complete
 
 defense to the action, but in
 
 mitigation
 
 of damages.”), and Pike waived any argument she might have had that her use of the $25,986 for the benefit of the mother constituted mitigation of the damages that could be assessed against her because she did not present that argument to the trial court,
 
 see Ex parte Ryals,
 
 773 So.2d 1011, 1013 (Ala.2000) (“[T]he appellate court can consider an argument against the validity of a summary judgment only to the extent that the record on appeal contains material from the trial court record presenting that argument to the trial court before or at the time of submission of the motion for summary judgment.” (emphasis omitted)), and she has not presented it to us,
 
 see Boshell v. Keith,
 
 418 So.2d 89, 92 (Ala.1982) (“When an appellant fails to argue an issue in its brief, that issue is waived.”).
 

 Pike also argues that Reed’s testifying that she had executed a revocation of the power of attorney created a genuine issue of material fact that precluded the granting of Reed’s summary-judgment motion. However, this argument has no merit because Reed did not base her motion on the alleged revocation of the power of attorney; rather, her motion presupposed that the power of attorney was valid and in force when Pike deposited the Alfa check into the Pikes’ account.
 

 Pike also argues that the trial court erred in granting Reed’s summary-judgment motion because genuine issues of material fact existed regarding how the proceeds of the Alfa check should have been apportioned between Reed and the mother. However, factual issues regarding the apportionment of the proceeds of the Alfa check after the Alfa check had been converted were not material because: (1) as discussed above, Pike committed the tort of conversion when she deposited the Alfa check into the Pikes’ account without Reed’s authorization; (2) as discussed above, Pike’s use of some of the proceeds of the Alfa check for the benefit of the mother, although it might have constituted mitigation of the amount of damages that could be assessed against Pike for the conversion of the Alfa check, did not constitute a complete defense to Reed’s claim of conversion; and (3) as discussed above, Pike waived any argument she may have had that she was entitled to mitigation of the amount of damages that could be assessed against her because she did not present that argument to the trial court and has not presented it to this court; therefore, factual issues relating to the apportionment of the proceeds of the Alfa check between Reed and the mother would only be material to the amount of mitigation Pike would be entitled to, an issue Pike had waived by her failure to raise it in the trial court and before this court. “Conflicting evidence on an immaterial fact issue will not rebut a summary-judgment movant’s prima facie showing that he is entitled to a summary judgment.”
 
 Black
 
 
 *262
 

 mon v. Brazil,
 
 895 So.2d 900, 909 (Ala.2004).
 

 Pike’s final argument is that Reed failed to establish that she was entitled to a judgment as a matter of law. We disagree for the reasons already discussed above. We note that the amount of damages assessed by the trial court, $26,604, exceeds the difference between the amount of the Alfa check, $41,698, and the amount of the check Pike gave Reed, $15,712. However, we cannot reverse the trial court’s judgment on the basis of this discrepancy because Pike has not specifically argued to us that this discrepancy constituted error.
 
 See Boshell v. Keith,
 
 418 So.2d at 92 (‘When an appellant fails to argue an issue in its brief, that issue is waived.”).
 

 For the foregoing reasons, the summary judgment in favor of Reed is affirmed.
 

 AFFIRMED.
 

 THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.
 

 [1]
 

 . This is the second time these parties have been before this court. In
 
 Pike v. Reed,
 
 3 So.3d 201 (Ala.Civ.App.2008), we dismissed two earlier consolidated appeals filed by Pike on the ground that they were appeals from a nonfinal judgment. The nonfinal judgment that was the subject of those two consolidated appeals was a partial summary judgment in favor of Reed with respect to liability; the partial summary judgment did not determine what relief Reed should receive. Following the dismissal of Pike’s two consolidated appeals from the nonfinal partial summary judgment, the trial court entered a summary judgment in favor of Reed that, as subsequently amended, constituted a final judgment. As amended, the summary judgment awarded Reed damages in the amount of $26,604 and denied all other relief she had requested. Pike then filed the appeal now before us.
 

 [2]
 

 . See note 1, supra.