Wal-Mart Stores, Inc. ("Wal-Mart"), sought permission pursuant to Rule 5, Ala.R.App.P., to appeal the denial of the summary-judgment motion it filed in an action commenced against it by Reginald S. Patterson. We granted Wal-Mart permission to appeal, and we affirm.
According to the undisputed facts, on September 13, 1993, Sandra Patterson, at that time the estranged wife of Reginald S. Patterson, entered the Wal-Mart discount store in Fairfield, presented merchandise at a checkout counter, and issued a check drawn on the account of Reginald S. Patterson at AmSouth Bank, N.A. ("AmSouth"), in payment for the merchandise.[1] She signed the check "Reginald S. Patterson." AmSouth refused to honor the check because there were insufficient funds in the account, and it returned the check to Wal-Mart.
Wal-Mart attempted unsuccessfully to contact Reginald Patterson at the telephone number printed on the check. On October 19, 1993, Wal-Mart sent a notice by certified mail to "Reginald S. Patterson," at the address printed on the check. That notice stated, in pertinent part:
 "This statutory notice is provided pursuant to section 13A-9-13.2 of the Alabama Code. You are hereby notified that a check or instrument number 284 apparently issued by you on 9-13-93, drawn upon AmSouth, has been dishonored. Pursuant to the Alabama Law, you have ten (10) days from receipt of this notice to tender payment of the full amount of the check or instrument plus a service charge of [$20.00], the total being $98.16. Unless this amount is paid in full within the specified time above, the holder of such check or instrument may assume you delivered the instrument with the intent to defraud, and turn over the dishonored instrument and all other available information relating to this incident to the proper authorities for criminal prosecution."
After unsuccessfully attempting delivery on three separate dates, the United States postal service returned the notice, marked "Unclaimed."
On July 11, 1997, the Fairfield Municipal Court, upon Wal-Mart's complaint, issued a warrant for the arrest of Reginald S. Patterson. On July 15, 1997, Patterson voluntarily presented himself to the Fairfield Police Department for arrest. On October 9, 1997, the case was nol-prossed on the ground that the signature on the check was a forgery.
Thereafter, Patterson sued Wal-Mart on various theories of negligence, wantonness, and malicious prosecution. Wal-Mart moved for a summary judgment, on the ground that it was immune from civil liability for instigating the prosecution of Patterson.[2] In its order denying that motion, the trial court stated, in pertinent part:
 "On September 13, 1993, a check was written to the Fairfield Wal-Mart Store on the account of Reginald Patterson. The check was not honored by Patterson's bank. The evidence concerning the identity of the person who actually negotiated that check is undisputed. The check was negotiated by Patterson's ex-wife. *Page 3 
". . . .
 "Defendant puts all its eggs in one basket in support of summary judgment. Wal-Mart argues that it is entitled to summary judgment based on the case of Johnson v. Wal-Mart Stores, Inc., [769 So.2d 929
(Ala.Civ.App. 1999)]. In Johnson, Wal-Mart argued that Ala. Code 1975, § 13A-9-13.2(3), provided it with immunity from civil liability in a malicious prosecution case over a worthless instrument. That statute reads:
 "`Any party holding a worthless negotiable instrument and giving notice in substantially similar form to that provided in subdivision (2) of this section shall be immune from civil or criminal liability for the giving of such notice and for proceeding under the forms of such notice.'
"Ala. Code, 1975, § 13A-9-13.2(3).
 "Johnson is the only reported case that has held that the statute immunizes one whose conduct otherwise constitutes malicious prosecution. However, this court finds that Johnson is not applicable to this case because there is no evidence before the court that Wal-Mart complied with the provisions of the Worthless Check Act so as to be entitled to immunity. Noticeably absent from Wal-Mart's evidentiary submission in support of its motion for summary judgment is a copy of the back of the check in question. Only the front of the check was offered. Therefore, there is no evidence that Wal-Mart complied with the identification procedures required by Ala. Code 1975, § 13A-9-13.3 prior to accepting the check in question. The statute requires that a party accepting a negotiable instrument shall request the presenter's name, residence address and home phone number. . . .
 "Johnson holds that the Worthless Check Act grants civil immunity to a holder of a worthless negotiable instrument who gives appropriate notice and otherwise follows the mandates of the statute. Johnson is not applicable in this case because there is no evidence that the identification procedures required by Ala. Code 1975, § 13A-9-13.3 prior to accepting the check in question were followed in this case. To hold otherwise would be to give carte blanche immunity to every storekeeper who simply gives proper notice that a check has been dishonored even though they are aware that the check was presented by someone other than the owner of the account. Johnson is simply not that broad."
On November 17, 2000, Wal-Mart moved for a certification of appealability to this Court of a "controlling issue of law," which Wal-Mart described as follows:
 "Wal-Mart is entitled to immunity from the plaintiff's claims pursuant to [Ala. Code 1975,] § 13A-9-13.2(3) and Johnson v. Wal-Mart Stores, Inc., [769 So.2d 929
(Ala.Civ.App. 1999)].
". . . .
 "The facts of Johnson v. Wal-Mart are identical to the case at bar. In both cases, the plaintiffs claim that they were wrongfully prosecuted for a check they did not write. In both cases, the plaintiffs claim that their respective spouses wrote the checks in question. In both cases, the plaintiffs claim that the defendants knew that someone other than the plaintiffs wrote the checks in question. In Johnson, the Court of Civil Appeals held that because Wal-Mart gave notice and otherwise followed the mandates of the Worthless Check Act it was immune from civil prosecution."
The trial court granted Wal-Mart's motion, and, pursuant to Ala.R.App.P. 5, this Court allowed Wal-Mart permission to appeal. *Page 4 
On appeal, Wal-Mart contends that the trial court erred in denying its summary-judgment motion on the basis that it failed to present evidence that it had complied with the identity provisions of § 13A-9-13.3. Thus, the sole question before us is whether the trial court erred as a matter of law in holding that Wal-Mart is not entitled to the immunity § 13A-9-13.2 affords the holder of a dishonored check, absent evidence that it had complied with the identification procedures set forth in § 13A-9-13.3. We answer that question in the negative.
At all relevant times, the Alabama Worthless Check Act, Ala. Code 1975, §§ 13A-9-13.1 to -13.3 ("the Act"), provided, in pertinent part:[3]
 "[§ 13A-9-13.1](a) A person commits the crime of negotiating a worthless negotiable instrument if he negotiates or delivers a negotiable instrument for a thing of value and with the intent, knowledge or expectation that it will not be honored by the drawee.
 "(b) For the purposes of this section, it is prima facie evidence that the maker or drawer intended, knew or expected that the instrument would not be honored if:
 "(1) The maker or drawer had no account with the drawee at the time the negotiable instrument was negotiated or delivered, as determined according to Section 7-3-503(2); or
 "(2) Payment was refused by the drawee for lack of funds, upon presentation within 30 days after delivery, and the maker or drawer shall not have paid the holder thereof the amount due thereon, together with a service charge of not more than $20.00, within 10 days after receiving written notice from the holder of the instrument that payment was refused upon such instrument, as provided in Section 13A-9-13.2; or
 "(3) Notice that payment was refused is mailed by certified or registered mail and is returned undelivered to the sender, when such notice is mailed within a reasonable time after dishonor to the address printed on the instrument or given by the maker or drawer at the time of issuance of the instrument."
"[§ 13A-9-13.2] For purposes of Section 13A-9-13.1:
 "(1) Notice mailed by certified or registered mail, evidenced by return receipt, to the address printed on the instrument or given at the time of issuance shall be deemed sufficient and equivalent to notice having been received by the person making, drawing, uttering or delivering said instrument.
 "(2) The form of notice shall be substantially as follows:
 "`This statutory notice is provided pursuant to Section 13A-9-13.2 of the Alabama Code. You are hereby notified that a check or instrument numbered . . . . . . . ., apparently issued by you on . . . . . . . . (date), drawn upon . . . . . . . . . . . . . . (name of bank), and payable to . . . . . . . . . . . . . ., has been dishonored. Pursuant to Alabama law, you have 10 days from receipt of this notice to tender payment of the full amount of such check or instrument plus a service charge of not more than $20.00, the total amount due being $ . . . . . . . . . Unless this *Page 5 
 amount is paid in full within the specified time above, the holder of such check or instrument may assume that you delivered the instrument with intent to defraud and may turn over the dishonored instrument and all other available information relating to this incident to the proper authorities for criminal prosecution.'
 "(3) Any party holding a worthless negotiable instrument and giving notice in substantially similar form to that provided in subdivision (2) of this section shall be immune from civil or criminal liability for the giving of such notice and for proceeding under the forms of such notice."
 "[§ 13A-9-13.3](a) In any prosecution or action under the provisions of Section 13A-9-13.1, a negotiable instrument for which the information required in subsections (b) and (c) of this section is available at the time of issuance shall constitute prima facie evidence of the identity of the party issuing the negotiable instrument and that such person was a party authorized to draw upon the named account.
 "(b) To establish this prima facie evidence, the following information regarding the identity of the party presenting the negotiable instrument shall be requested by the party receiving such instrument: the presenter's name, residence address, and home phone number. Such information may be provided by either of two methods:
 "(1) It may be recorded upon the negotiable instrument itself; or
 "(2) The number of a check-cashing identification card issued by the receiving party may be recorded on the negotiable instrument. Such check-cashing identification card shall be issued only after the information required in this subsection has been placed on file by the receiving party.
 "(c) In addition to the information required in subsection (b) of this section, the party receiving a negotiable instrument shall witness the signature or endorsement of the party presenting such negotiable instrument and, as evidence of such, the receiving party shall initial the negotiable instrument."
(Emphasis added.)
Wal-Mart confines its construction of the Act to § 13A-9-13.2, contending that that section is the only section applicable to this case. In other words, it insists that as long as it employs the form ofthe notice set forth in § 13A-9-13.2(2) it is entitled by §13A-9-13.2(3) to immunity from civil liability, whether or not it complies with other provisions of the Act. Patterson, on the other hand, argues: "The immunity provision [in § 13A-9-13.2(3)] cannot be considered standing alone, or in a vacuum. Section 13A-19-13.3 must be construed in pari materia with § 13A-9-13.1, as well as §13A-9-13.2." Brief of Appellee, at 17 (footnote omitted). The immunities embodied in § 13A-9-13.2(3) do not apply, because, he contends, Wal-Mart failed to comply with other provisions of the Act, in particular, the identification procedures embodied in § 13A-9-13.3. Thus, the issue might be stated more narrowly as whether the holder of a worthless check is entitled to rely on the immunity provisions of §13A-9-13.2(3), absent compliance with the provisions enacted in §13A-9-13.3 to ensure the identity of the maker of the check.
Nearly every state has enacted a statutory scheme dealing with worthless checks. Piggly Wiggly No. 208, Inc. v. Dutton, 601 So.2d 907,909 (Ala. 1992); Tolbert v. State, 294 Ala. 738, 743, 321 So.2d 227, 232
(1975). "The Alabama statutes have been *Page 6 
revised many times to conform to the contemporary pattern of `bad check' laws." Comments to §§ 13A-9-13.1 to -13.3 (emphasis added).
In this connection, Patterson states that Georgia's "Worthless Check Act," namely, Ga. Code Ann. § 16-9-20 (Supp. 2001), "extends immunity only against a suit brought by the person who made, drew, uttered, executed or delivered the check but [does] not exclude a suit by an innocent party whose name was forged to a fraudulent account." Brief of Appellee, at 14 (citing Nicholl v. Great Atlantic Pacific Tea Co.,238 Ga. App. 30, 517 S.E.2d 561 (1999); Joseph v. Home Depot, Inc.,246 Ga. App. 868, 542 S.E.2d 618 (2000)). Thus, he argues, §13A-9-13.2(3) "provide[s] immunity only against a suit brought by the person who made, drew, uttered, executed or delivered the check. The statute does not extend immunity to any other situation, including a suit by an innocent person whose name was forged." Brief of Appellee, at 14.
Wal-Mart's counterargument is that the Georgia statute reads differently than § 13A-9-13.2, the corresponding Alabama provision. Section 16-9-20(h)(1), Ga. Code Ann., states in part:
 "Any party holding a worthless instrument and giving notice in substantially similar form to that provided in subparagraph (a)(2)(B) of this Code section shall be immune from civil liability for the giving of such notice and for proceeding as required under the forms of such notice. . . . In any civil action for damages which may be brought by the person who made, drew, uttered, executed, or delivered such instrument, no evidence of statements or representations as to the status of the instrument involved or of any collateral agreement with reference to the instrument shall be admissible unless such statements, representations, or collateral agreement shall be written simultaneously with or upon the instrument at the time it is delivered by the maker thereof."
(Emphasis added.)
To be sure, the specific phrase emphasized in the above quotation appears nowhere in the Alabama statutory scheme. However, that omission is not dispositive. Applying well-established principles of statutory construction, we conclude that the import of § 13A-9-13.2(3) is similar to that of the illustrative Georgia statute.
"In construing statutes, this Court does not interpret provisions in isolation, but considers them in the context of the entire statutory scheme." Governor Don Siegelman v. Alabama Ass'n of School Bds., [Ms. 1000951, June 29, 2001] ___ So.2d ___, ___ (Ala. 2001). See also Ex parteEmployees' Retirement Sys. of Alabama, 644 So.2d 943, 945 (Ala. 1994);Alabama Farm Bureau Mut. Cas. Ins. Co. v. City of Hartselle,460 So.2d 1219, 1225 (Ala. 1984); Darks Dairy, Inc. v. Alabama DairyComm'n, 367 So.2d 1378, 1380 (Ala. 1979). The Court is not at liberty to rewrite statutes, Reed v. Board of Trustees for Alabama State Univ.,778 So.2d 791, 794 (Ala. 2000), or "to substitute its judgment for that of the Legislature." Baptist Health Sys., Inc. v. City of Midfield,792 So.2d 1095, 1097 (Ala. 2001) (internal quotations omitted). "Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says." Ex parteMaster Boat Builders, Inc., 779 So.2d 192, 196 (Ala. 2000) (internal quotations omitted). With these rules in view, we turn to the language of the Act. *Page 7 
On its face, the Act applies to "the person [who] negotiates ordelivers" a worthless check. Section 13A-9-13.1(a) (emphasis added). Subsection (b) sets forth such circumstances as would constitute "prima facie evidence" of that person's intent.
In 13A-9-13.2(1), it is the "person making"(emphasis added) the check to whom notice must be sent. That is the person from whom a prompt response is required by subsection (2). In other words, the Legislature placed no significance on the failure of any nonmaker to respond to the notice authorized by § 13A-9-13.2(2). In that respect, the Act differs from the Georgia statute, under which the failure of "the accusedor someone for him or her," to respond "after receiving written notice that payment was refused," § 16-9-20(a)(2), constitutes prima facie evidence of the maker's criminal intent. Section 16-9-20(a). By its plain and unambiguous terms, the Act applies only to the makers of worthless checks, not to the innocent victims of forgery. Construing the Act as a whole — as we are required to do — compels the conclusion that individuals such as Patterson are not bound by its provisions.
Of further significance to this analysis is § 13A-9-13.3(a), which provides:
 "In any prosecution or action under the provisions of Section 13A-9-13.1, a negotiable instrument for which the information required in subsections (b) and (c) of this section is available at the time of issuance shall constitute prima facie evidence of the identity of the party issuing the negotiable instrument and that such person was a party authorized to draw upon the named account."
(Emphasis added.) In this section, the Legislature clearly anticipated disputes over the identity of the maker. But subsection (a) is made expressly subject to the requirements in subsections (b) and (c). Thus, a holder may rely on the check as "prima facie evidence of identity of the [issuing] party," only if, among other things, it witnesses the maker'ssignature, "and, as evidence of such, . . . initial[s]" the check itself, § 13A-9-13.3(c), and only if that signature corresponds with the actual name of the maker as established in accordance with §13A-9-13.3(b). In other words, a check holder who instigates a criminal proceeding in the absence of compliance with § 13A-9-13.3(c) does sowithout even prima facie evidence of identity of the accused.
Nothing in the Act suggests that the Legislature intended to immunize check holders from the consequences of actions against them by innocentvictims of forgery, whose criminal prosecutions resulted from thecomplete failure of holders to obtain proof of identity. In fact, the contrary argument deprives § 13A-9-13.3 of much of its raisond'etre. If the holder of a worthless check need only comply with §13A-9-13.2(1)-(2) to achieve immunity, as Wal-Mart contends, what, then, is the purpose of § 13A-9-13.3? If it is not to restrict the scope of § 13A-9-13.2(3) to those instances in which prima facie evidence of identity exists, then the purpose of § 13A-9-13.3 is, indeed, obscure. However, we will not presume that the Legislature "use[d] language without any meaning or application." McDonald v. State,32 Ala. App. 606, 609, 28 So.2d 805, 807 (1947).
We hold, therefore, that compliance with the identity provisions of § 13A-9-13.3, on which prima facie evidence of identity depends, is part and parcel of the grant of immunity. The consequences of such noncompliance are nowhere better illustrated than in this case. Sandra
Patterson signed the check as Reginald *Page 8 
Patterson. Such a patent inconsistency could not have escaped the detection of even a casual observer.[4] The notice of dishonor was, nevertheless, sent to Reginald Patterson, on whom the Act placed no duty to respond, and attributed no significance to his failure to do so. We agree with the trial judge, that to accept Wal-Mart's construction of the Act "would be to give carte blanche immunity to every storekeeper who simply gives proper notice that a check has been dishonored even though they are aware that the check was presented by someone other than the owner of the account."
We come now to Johnson v. Wal-Mart Stores, Inc., 769 So.2d 929
(Ala.Civ.App. 1999). Wal-Mart contends that "the facts of [Johnson] are identical to the case at bar." Patterson, as did the trial judge, attempts to distinguish that case. We can discern no principled basis on which to distinguish the cases.
The operative facts in Johnson differ from those in this case in only one respect. In Johnson, a check was drawn on the account of Mary Johnson by her husband, Will Johnson, Jr., who forged his wife's name. "Handwritten on the check [were] the name `Will Johnson, Jr.,' Will Johnson, Jr.'s Social Security number, and Mary Johnson's street address." Id. at 930. Thus, it appeared on the face of the instrument that Mary Johnson was not its maker. Nevertheless, Wal-Mart instigated a criminal proceeding against her. After "the case against her was nol-prossed by the district attorney," she sued Wal-Mart for "fraud, false arrest, false imprisonment, malicious prosecution, and abuse of process." Id. The trial court granted Wal-Mart's summary-judgment motion, based on the immunity provisions of § 13A-9-13.2(3).
Relying exclusively on one section of the Act, namely, § 13A-9-13.2, the Court of Civil Appeals in Johnson affirmed the judgment. The court stated:
 "The notice referred to in § 13A-9-13.2(3) informs the person whose name and address appear on the instrument, see Ala. Code 1975, § 13A-9-13.2(1), that the instrument was dishonored and that, if certain conditions are not met, the holder of the instrument `may turn over the dishonored instrument and all other available information relating to this incident to the proper authorities for criminal prosecution.' Ala. Code 1975, § 13A-9-13-2(2). The evidence in the record requires the conclusion that Wal-Mart provided the proper notice to Johnson."
769 So.2d at 930 (emphasis added).
As we have noted previously in this opinion, the Act assumes that the person to whom the notice is sent is the maker of the instrument. It places no burden on a nonmaker to respond to notice. The Court of Civil Appeals erred, therefore, in attributing significance to the mailing of notice to Mary Johnson, who, Wal-Mart knew, did not issue the check. Because Johnson was wrongly decided, that case is overruled.
In summary, the immunity provisions of § 13A-9-13.2(3) apply only where the check holder has complied with other provisions of the Act, notably, the identity provisions of § 13A-9-13.3. The trial judge did not err, therefore, in rejecting Wal-Mart's immunity argument. The trial *Page 9 
court's order denying Wal-Mart's summary judgment motion is affirmed.
AFFIRMED.
Moore, C.J., and Houston, Lyons, and Johnstone, JJ., concur.
[1] In its "Narrative Summary of Undisputed Facts," filed in support of its summary-judgment motion, Wal-Mart conceded that Reginald S. Patterson "has never been in the Fairfield Wal-Mart at any time in his life."
[2] Although Wal-Mart's summary-judgment motion and its brief in this Court addressed issues other than immunity, those other issues are beyond the scope of this permissive appeal.
[3] Sections 13A-9-13.1 through -13.3 were amended effective January 1, 1998. Because the events that are the basis of this appeal took place in 1993, in all instances in this opinion where we quote from those Code sections, we are quoting the version before the 1998 amendment.
[4] As the trial court correctly observed, the "receiving party," that is, the Wal-Mart employee who accepted the check, did not "initial" it as required by § 13A-9-13.3(c).