THOMPSON, Presiding Judge.
 

 Blakely Kitchens, Morgan Kitchens, and Kitchens Properties (hereinafter collectively “the Kitehenses”) appeal from a judgment of the Baldwin Circuit Court (“the trial court”) denying their request for the trial court to consider additional compensatory damages in recalculating the amount of punitive damages awarded to them by an arbitrator. Turquoise Properties Gulf, Inc. (“Turquoise Properties”), cross-appeals from the same judgment, in which the trial court modified the arbitration order to increase the ratio of punitive damages to compensatory damages.
 

 This dispute arose when the Kitehenses refused to close on the sale of three units in Turquoise Place, a condominium complex that Turquoise Properties was developing in Orange Beach. Because the parties challenge only the amount of damages awarded and not the arbitrator’s findings regarding liability on the claims and counterclaims the parties raised, a full recitation of the evidence presented is unnecessary. The facts relevant to this appeal are as follows:
 

 On March 24, 2005, Morgan Kitchens (“Morgan”) and Blakely Kitchens (“Blake”), who are brothers, each entered into a purchase agreement to purchase two adjoining units in Turquoise Place. Each
 
 *379
 
 unit cost $1,200,900. Morgan and Blake each posted a letter of credit in the amount of $240,180, or 20% of the total purchase price, as a deposit on his respective unit.
 

 Also on March 24, 2005, Kitchens Properties, a partnership between Morgan and Blake, entered into a purchase agreement for a third unit in Turquoise Place. The price for that unit was $1,215,900. Kitchens Properties posted a letter of credit in the amount of $243,180, or 20% of the total purchase price, on the unit it had agreed to buy.
 

 As the Turquoise Place development neared completion, certificates of occupancy were issued for the Kitchenses’ units. In June 2008, Turquoise Properties sent the Kitchenses letters demanding that they close on the units they had agreed to purchase. At that time, however, the pool for the development had not been completed, and storage units and cabanas that had been part of the proposal for the Turquoise Place development had not been built because of a lack of interest in the structures. The storage units and cabanas were to be purchased separately from the residential units in Turquoise Place. The Kitchenses refused to close because, they said, the proposed storage units and cabanas were unique to Gulf Coast condominiums and were among the reasons the Kitchenses had decided to purchase units in Turquoise Place. Turquoise Properties offered to build storage units and cabanas for the Kitchenses if they agreed to close on their units. Nonetheless, the Kitchens-es refused to close because, they said, they were relieved from their obligations to purchase the units because Turquoise Properties had failed to deliver what had been promised in its sales brochure.
 

 The purchase agreements provided that, in the case of a default by the purchaser, Turquoise Properties was entitled to retain 15% of the total purchase price of the unit. The Kitchenses had paid 20% of the total purchase price of each of the units. However, when the Kitchenses refused to close on any of the units, Turquoise Properties did not refund the additional 5% of the purchase price the Kitchenses had paid.
 

 On March 24, 2008, the Kitchenses sued Turquoise Properties and its principal, Larry Wireman; Caribe Realty, the sales agent for Turquoise Place; and Wireman’s wife, Judy Ramey Wireman, who was a principal with Caribe Realty (collectively “the Turquoise Properties defendants”), alleging breach of contract, fraud, and violations of the Interstate Land Sales and Full Disclosure Act (“the ILSFDA”), 15 U.S.C. § 1701 et seq., and the Aabama Uniform Condominium Act (“the AUCA”), § 35-8A-101 et seq., Aa.Code 1975. The Kitch-enses later filed an amended complaint that, among other things, added U.S. Bank, N.A. as a defendant and alleged a claim of conversion against U.S. Bank and Turquoise Properties. As to the conversion claim, the Kitchenses claimed that, because the purchase agreements allowed Turquoise Properties to retain 15% of the total purchase price in the case of a default by the purchaser, and because they had paid 20% of the purchase price of each unit as their deposits, Turquoise Properties was unlawfully refusing to refund 25% of each deposit, or 5% of the total purchase price of each unit. The parties and the arbitrator referred to the money at issue as the “5% excess.” At the time the complaint was filed, U.S. Bank was holding the deposits in escrow.
 

 The Turquoise Properties defendants filed a counterclaim against the Kitchenses alleging misrepresentation under the AUCA and the ILSFDA, deceit, defamation, interference with a contractual relationship, and claims under the Aabama Litigation Accountability Act, § 12-19-270
 
 *380
 
 et seq., Ala.Code 1975. The Turquoise Properties defendants moved to compel arbitration, as provided in the purchase agreements. The trial court granted the motion, and the matter went to arbitration.
 

 The arbitration hearing was held on June 10, 11, and 12, 2009. On June 15, 2009, the arbitrator entered an interim order directing U.S. Bank to refund $60,045 each to Morgan and Blake and $60,795 to Kitchens Properties, which represented 25% of the principal amounts of their deposits, plus interest. The arbitrator went on to say that payment of the refunds did not affect any pending claims, defenses, or rights to the remaining amounts on deposit. The money was paid to the Kitchenses on June 22, 2009.
 

 On September 30, 2009, the arbitrator issued its final order. The arbitrator found in favor of the Turquoise Properties defendants on all the Kitchenses’ claims except for the conversion claim asserted against Turquoise Properties.
 
 [1]
 
 He found in favor of the Kitchenses on all the Turquoise Properties defendants’ counterclaims. As to the conversion claim against Turquoise Properties, the arbitrator found that Turquoise Properties had wrongly withheld the 5% excess from the Kitchens-es because they had sought to enforce their rights against Turquoise Properties. In the order, the arbitrator found that the 5% excess had been improperly withheld for 13 months, and he ordered Turquoise Properties to pay 6% interest on the excess for that period. The arbitrator calculated that Morgan and Blake were both due $3,602.70 in interest and that Kitchens Properties was due $3,647.70 in interest.
 

 In addition, the arbitrator held that Turquoise Properties’ “conversion of the [Kitchenses’] money was willful and intended to oppress and aggravate the [Kitchenses].” The arbitrator further held “that a 3:1 ratio for punitive damages is not excessive” and “that the proper measure of damages since the five percent (5%) excess has now been repaid is a multiple of the interest lost on said money rather than the amount withheld.” The arbitrator awarded Morgan and Blake damages of $10,808.10 each and awarded Kitchens Properties damages of $10,943.10. The balance of the Kitchenses’ deposits that were being held in escrow were ordered to be turned over to Turquoise Properties.
 

 The Kitchenses filed with the arbitrator a motion to modify the arbitration award because of alleged computational errors. In support of their motion, the Kitchenses argued that, because Turquoise Properties had acted willfully and oppressively in withholding the 5% excess, they should have been awarded punitive damages, at a 3:1 ration, based upon the amount of the principal the arbitrator ordered returned to them in the interim order and not just on the interest awarded in the final order. The arbitrator denied the motion on November 3, 2009.
 

 The Kitchenses timely appealed the arbitrator’s award to the trial court. On February 2, 2010, the Baldwin circuit clerk entered a judgment on the arbitrator’s award. The Kitchenses then filed a motion asking the trial court to modify, correct, or vacate the arbitration award as to the conversion claim against Turquoise Properties, asserting that the arbitrator had exceeded his authority, had exhibited evident partiality, and had engaged in misconduct or misbehavior that had prejudiced the Kitchenses’ rights by awarding inadequate damages. The Kitchenses asserted that punitive damages should have been calculated based on both the amount
 
 *381
 
 of the 5% excess that the arbitrator had ordered Turquoise Properties to refund to them and the interest that had accrued on the excess. Alternatively, the Kitchenses argued, the award was due to be modified because, they said, the arbitrator had miscalculated the amount of punitive damages, awarding them punitive damages based upon the amount of interest awarded, at a 2:1 ratio rather than the 3:1 ratio to which the Kitchenses contended they were entitled.
 

 Upon consideration of the Kitchenses’ motion, the trial court entered a judgment increasing by one-third the amount of punitive damages awarded. In its judgment, the trial court stated as follows:
 

 “[Tjhere seems to be an ambiguity in the award of monetary damages compared to the findings by the arbitrator. While the Court has concerns regarding the arbitrator’s grant of punitive damages on the interest accrued and not on the converted principle, this court is without authority to correct that portion of the award.
 

 “However, the Court does have authority to modify the arbitration award to correct the ambiguity and evident miscalculation on the punitive ratio. The arbitrator specifically stated in the award that the [Kitchenses] are entitled to a 3:1 punitive ratio, yet the computation of the award applied a 2:1 punitive ratio. This ambiguity does not sufficiently determine the award and is an evident miscalculation.”
 

 The trial court then recalculated the damages and ordered Turquoise Properties to pay Morgan and Blake each $14,410.80, representing $3,602.70 in compensatory damages and $10,808.10 in punitive damages, and to pay Kitchens Properties $14,590.80, representing $3,647.70 in compensatory damages and $10,943.10 in punitive damages, for a total award to the Kitchenses of $43,412.40. The Kitchenses timely appealed from the trial court’s judgment to this court; Turquoise Properties timely cross-appealed from the judgment.
 

 “The standard of review applicable to a ruling on a motion to confirm or vacate an arbitration award was discussed in
 
 Maxus, Inc. v. Sciacca,
 
 598 So.2d 1376, 1380-81 (Ala.1992):
 

 “‘Where parties, as in this case, have agreed that disputes should go to arbitration, the role of the courts in reviewing the arbitration award is limited.
 
 Transit Casualty Co. v. Trenwick Reinsurance Co.,
 
 659 F.Supp. 1346 (S.D.N.Y.1987),
 
 affirmed,
 
 841 F.2d 1117 (2d Cir.1988);
 
 Saxis Steamship Co. v. Multifacs International Traders, Inc.,
 
 375 F.2d 577 (2d Cir. 1967). On motions to confirm or to vacate an award, it is not the function of courts to agree or disagree with the reasoning of the arbitrators.
 
 Application of States Marine Corp. of Delaware,
 
 127 F.Supp. 943 (S.D.N.Y.1954). Courts are only to ascertain whether there exists one of the specific grounds for vacation of an award.
 
 Saxis Steamship Co.
 
 A court cannot set aside the arbitration award just because it disagrees with it; a policy allowing it to do so would undermine the federal policy of encouraging the settlement of disputes by arbitration.
 
 United Steelworkers of America v. Enterprise Wheel & Car Corp.,
 
 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960);
 
 Virgin Islands Nursing Association’s Bargaining Unit v. Schneider,
 
 668 F.2d 221 (3d Cir.1981). An award should be vacated only where the party attacking the award clearly establishes one of the grounds specified [in 9 U.S.C. § 10].
 
 Catz American Co. v. Pearl Grange Fruit
 
 
 *382
 

 Exchange, Inc.,
 
 292 F.Supp. 549 (S.D.N.Y.1968).’ ”
 

 R.P. Indus., Inc. v. S & M Equip. Co.,
 
 896 So.2d 460, 464 (Ala.2004).
 

 “The standard by which an appellate court reviews a trial court’s order confirming [or vacating] an arbitration award under the Federal Arbitration Act is that questions of law are reviewed de novo and findings of fact are reviewed only for clear error.
 
 See Ric-card v. Prudential Ins. Co.,
 
 307 F.3d 1277,1289 (11th Cir.2002).”
 

 Hereford v. D.R. Horton, Inc.,
 
 13 So.3d 375, 378 (Ala.2009).
 

 The Kitchenses’ Appeal
 

 The Kitchenses correctly point out that a return of the money improperly withheld does not constitute a complete defense to a claim of conversion.
 
 See Pike v. Reed,
 
 47 So.3d 253, 261 (Ala.Civ.App. 2009). However, Turquoise Properties is entitled to show the return of the 5% excess in mitigation of damages.
 
 Id. See also Brown v. Campbell,
 
 536 So.2d 920, 922 (Ala.1988) (“[R]ecovery of the property by the plaintiff does not bar a suit for conversion but merely reduced the plaintiffs damages by the value of the property at the time of its return.”). This is true even if the court has compelled the return of the converted property.
 
 Roebuck Auto Sales, Inc. v. Wallace,
 
 293 Ala. 231, 235, 301 So.2d 546, 549 (1974) (“ Tn any case, return of the chattel, whether consented to by the plaintiff or compelled by the court, does not bar the action, but goes merely to reduce the damages.’ ” (quoting
 
 Prosser on Torts,
 
 98 (3d ed.1964))). “[A]n ‘award of punitive damages is within the sound discretion of the jury, considering all attendant circumstances.... The jury’s award is to punish the wrongdoer based upon the enormity of the wrong to the plaintiff, as well as the necessity to prevent similar wrongs from being committed in the future.’
 
 Roberson v. Ammons,
 
 477 So.2d 957, 961 (Ala.1985).”
 
 Bishop v. Chilton County,
 
 990 So.2d 287, 290 (Ala.2008).
 
 See also Flint Constr. Co. v. Hall,
 
 904 So.2d 236, 254 (Ala.2004) (“whether to award punitive damages was discretionary with the jury”).
 

 The Kitchenses assert that the arbitrator’s award should have been vacated because, they say, the arbitrator exceeded his powers, exhibited partiality, exhibited misconduct or misbehavior that prejudiced their rights, and acted in manifest disregard of the law. Specifically, they argue, the 5% excess the arbitrator ordered Turquoise Properties to return to them in the June 2009 interim order constitutes compensatory damages that should have been included in the arbitrator’s calculation of punitive damages. In other words, the Kitchenses argue, the arbitrator should have awarded them $180,885 (the combined amount of the 5% excess for Morgan, Blake, and Kitchens Properties) plus interest on that amount of $10,853.10, for a total of $191,738.10 in compensatory damages, plus three times that amount, $575,214.30, in punitive damages, for total damages of $766,952.40.
 
 [2]
 

 In the purchase agreements, the parties explicitly agreed that arbitration of disputes would be governed by the Federal
 
 *383
 
 Arbitration Act (“the FAA”), 9 U.S.C. § 1 et seq. The FAA provides the following grounds for vacatur of an arbitration award:
 

 “(1) where the award was procured by corruption, fraud, or undue means;
 

 “(2) where there was evident partiality or corruption in the arbitrators, or either of them;
 

 “(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
 

 “(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.”
 

 9 U.S.C. § 10(a).
 

 The Kitchenses assert that, in determining the amount of damages to be awarded to them, the arbitrator exceeded his powers in violation of 9 U.S.C. § 10(a)(4).
 

 “In resolving a question concerning the authority of the arbitrators, courts must broadly construe the agreement and resolve all doubts in favor of the arbitrators.
 
 Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,
 
 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Further, the Supreme Court has stated that if the national policy favoring the settlement of disputes by arbitration is to have any real substance, then it is essential that arbitrators have a great deal of flexibility in fashioning remedies.
 
 United Steelworkers of America v. Enterprise Wheel & Car Corp.,
 
 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Thus there is a heavy burden on those claiming that the arbitrators’ awards exceed their authority, and the arbitrator is given broad latitude and discretion.
 
 Willoughby Roofing [& Supply Co. v. Kajima Int’l, Inc.,
 
 598 F.Supp. 353 (N.D.Ala.1984), aff'd, 776 F.2d 269 (11th Cir.1985)].”
 

 H.L. Fuller Constr. Co. v. Industrial Dev. Bd. of Vincent,
 
 590 So.2d 218, 223 (Ala.1991).
 

 In
 
 R.P. Industries, Inc. v. S & M Equipment Co.,
 
 supra, our supreme court considered the question whether arbitrators had exceeded their authority in awarding S & M Equipment interest and an attorney fee in a dispute arbitrated between the parties because, it was argued, the applicable state law did not provide for the award of such damages. In affirming the award, our supreme court quoted with approval an opinion of the United States Court of Appeals for the Second Circuit:
 

 “ ‘An arbitrator exceeds his powers when he “rule[s] on issues not presented to [him] by the parties.” See
 
 Fahnestock & Co. v. Wattman,
 
 935 F.2d 512, 515 (2d Cir.1991) (citation and quotation marks omitted); 9 U.S.C. § 10(a)(4). Section 10(a)(4) of the FAA “focuses on whether the arbitrator[ ] had the power, based on the parties’ submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrator! ] correctly decided that issue.”
 
 DiRussa v. Dean Witter Reynolds, Inc.,
 
 121 F.3d 818, 824 (2d Cir.1997). MVL contends that the arbitrator exceeded his powers by calculating Primary Year EBITDA [income from operations before certain enumerated expense and income items] in accordance with his understanding of the parties’ intent, rather than in accordance with GAAP [generally accepted accounting principles]. The District Court concluded
 
 *384
 
 that § 10(a)(4) does not provide a basis for vacatur of the arbitration award because “MVL’s contention that Sherrill failed to apply GAAP is best characterized as a challenge to his application of the law, rather than a challenge under Section 10(a)(4).” (Order, Aug. 30, 2002, at 80.)
 

 “ ‘We agree with the District Court. MVL does not contend that the arbitrator resolved an issue that the parties’ agreement did not authorize him to resolve. Indeed, the only issue that he resolved — the calculation of Primary Year EBITDA — was the precise issue that the Amendment authorized him to decide. (Amendment to Stock Purchase Agreement § 1(d); Letter from Sherrill to Morris and Smith of 8/15/01, at 4.) MVL does not argue that the arbitrator decided any issue other than the calculation of EBITDA; rather, MVL argues that he calculated EBITDA incorrectly. Even if MVL is correct, however, that argument provides no basis for vacating the award under § 10(a)(4). See
 
 DiRussa,
 
 121 F.3d at 824 (“DiRussa’s real objection appears to be that the arbitrators committed an obvious legal error in denying him attorney’s fees. Section 10(a)(4) was not intended to apply to such a situation.”).’
 

 “Hoeft v. MVL Group, Inc.,
 
 343 F.3d 57, 71-72 (2d Cir.2003). See also
 
 Nationwide Mut. Ins. Co. v. Home Ins. Co.,
 
 330 F.3d 843, 846 (6th Cir.2003);
 
 Buzas Baseball, Inc. v. Salt Lake Trappers, Inc.,
 
 925 P.2d 941 (Utah 1996); and
 
 Eljer Mfg., Inc. v. Kowin Dev. Corp.,
 
 14 F.3d 1250 (7th Cir.1994).”
 

 R.P. Industries, Inc.,
 
 896 So.2d at 466-67.
 

 In this case, the purchase agreements specifically provided that “[t]he parties agree that the arbitrator or arbitrators may grant any remedy or relief that an arbitrator deems just and equitable within the scope of the Agreement and subject to limitations of remedy as set forth in Section 4(b).” The limitations set forth in Section 4(b) of the purchase agreements are not applicable to this appeal.
 

 The issues regarding whether Turquoise Properties was liable for conversion for refusing to return the 5% excess to the Kitchenses and, if so, the amount of damages to be awarded to the Kitchenses were explicitly submitted to the arbitrator for resolution. The arbitrator cannot be said to have exceeded his powers in determining the issues before him. The Kitchenses claim that the arbitrator exceeded his powers in determining the amount of damages is in reality a claim that the arbitrator made a legal error in determining the amount of damages to be awarded. As pointed out in the cases cited in
 
 R.P. Industries,
 
 supra, Section 10(a)(4) was not intended to encompass such situations.
 

 The Kitchenses further assert that the arbitrator exceeded his authority because, they say, the amount of damages he awarded for the wrongful conversion of the 5% excess did not conform to Alabama law. In support of their contention, the Kitch-enses quote the following language from our supreme court’s recent opinion in
 
 Raymond James Financial Services, Inc. v. Hone a,
 
 55 So.3d 1161, 1166 (Ala.2010): “[E]ven though agreements providing for the expanded judicial review of arbitration awards may not be enforceable under the FAA, they are nevertheless enforceable under Alabama common law because Alabama courts have consistently held that general contract law requires that arbitration agreements be enforced as written.” The Kitchenses argue that, because the purchase agreements between the parties specified that they were “subject to and governed by the laws of the State of Alabama,” the quoted language from
 
 Honea
 
 
 *385
 
 broadens the bases for judicial review of the arbitration award beyond the bases enumerated in § 10 of the FAA to further include any failure by the arbitrator to comply with state law. Therefore, the Kitchenses say, because, in their opinion, the arbitrator’s award did not comply with Alabama law, it was due to be vacated.
 

 We first note that the language the Kitchenses quote from
 
 Honea
 
 is Honea’s argument; it is not the holding of our supreme court.
 
 Id.
 
 Moreover, we disagree with the Kitchenses’ reading of
 
 Ho-nea.
 
 At issue in that case was whether an agreement to expand the grounds for judicial review of an arbitration award, otherwise not enforceable under the FAA, was nonetheless enforceable “if those other grounds [were] authorized by state statute or by common law.”
 
 Id.
 
 at 1166. The arbitration agreement at issue, appearing in a provision entitled “Arbitration and Dispute Resolution,” contained the following language:
 

 “ ‘(c) A court of competent jurisdiction may enter judgment based on the award rendered by the arbitrators. We agree that both parties will have a right to appeal the decision of the arbitrators if the arbitrators award damages that exceed $100,000; the arbitrators do not award damages and the amount of my loss of principal exceeds $100,000; or the arbitrators award punitive damages. In each of the foregoing cases, a court having jurisdiction will conduct a “de novo” review of the transcript and exhibits of the arbitration hearing.’ ”
 

 Honea,
 
 55 So.3d at 1168.
 

 In
 
 Honea,
 
 Raymond James argued, among other things, that under the FAA and the Alabama Arbitration Act (“the AAA”), § 6-6-1 et seq., Ala.Code 1975, “courts may not engage in de novo review even if the parties had contractually agreed to such review.”
 
 Id.
 
 at 1168. Our supreme court disagreed, however, holding that,
 

 “[u]nder the Alabama common law, courts must rigorously enforce contracts, including arbitration agreements, according to their terms in order to give effect to the contractual rights and expectations of the parties.... Applying that principle in this case requires us to give effect to the provision in the arbitration agreement authorizing a court having jurisdiction to conduct a de novo review of the award entered as a result of arbitration proceedings conducted pursuant to that same agreement.”
 

 Id.
 
 at 1169.
 

 In this case, the language on which the Kitchenses rely in support of their contention that the purchase agreements provided for expanded judicial review of the arbitration award, i.e., that the
 
 purchase
 
 agreements are governed by Alabama law, does not appear in the arbitration provision of the purchase agreements. The
 
 arbitration
 
 provision in the purchase agreements states that the agreements “shall be governed by the [FAA].” Nothing in the arbitration provision itself allows for expanded judicial review of the arbitration award on state-law grounds.
 

 To read
 
 Honea
 
 as the Kitchenses do would be to eviscerate the purpose behind arbitration, i.e., to settle disputes without the need for formal litigation.
 
 See
 
 § 6-6-1, Ala.Code 1975. As the United States Supreme Court explained in
 
 Hall Street Associates, L.L.C. v. Mattel, Inc.,
 
 552 U.S. 576, 588, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008), in concluding that contractual provisions allowing for expanded judicial review of an arbitration award are unenforceable:
 

 “Instead of fighting the text [of the sections of the FAA providing for vaca-tur and modification of arbitration awards], it makes more sense to see the
 
 *386
 
 three provisions, §§ 9-11, as substantiating a national policy favoring arbitration with just the limited review needed to maintain arbitration’s essential virtue of resolving disputes straightaway.
 
 Any other reading opens the door to the full-bore legal and evidentiary appeals that can ‘rende[r•] informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process, ’ Kyocera [Corp. v. Prudential-Bache Trade Servs., Inc.],
 
 341 F.3d [987] at 998 [ (9th Cir.2003) ]; cf.
 
 Ethyl Corp. v. United Steelworkers of America,
 
 768 F.2d 180, 184 (C.A.7 1985),
 
 and bring arbitration theory to grief in post-arbitration process.”
 

 (Emphasis added.)
 

 Accordingly, we reject the Kitchenses’ assertion that
 
 Honea
 
 requires us to vacate the arbitration award on the basis that the award was not determined in compliance with state law. We conclude that the arbitrator did not exceed his powers in determining the amount of damages to be awarded to the Kitchenses on their conversion claim.
 

 The Kitchenses also contend that, in determining damages, the arbitrator exhibited partiality in violation of § 10(a)(2) of the FAA. Our research has revealed no Alabama cases involving the alleged impartiality of an arbitrator in making a decision. We turn, then, to opinions of federal jurisdictions for guidance. In
 
 Hobet Mining, Inc. v. International Union, United Mine Workers of America,
 
 877 F.Supp. 1011 (S.D.W.Va.1994), the United States District Court for the Southern District of West Virginia discussed the burden required of a party asserting that an arbitrator has exhibited partiality.
 

 “In general, to demonstrate ‘evident partiality under the FAA, the party seeking vacation has the burden of proving that ‘a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration.’
 
 [7]
 

 Morelite [Constr. Corp. v. New York City Dish Council Carpenters Benefit Funds
 
 ], 748 F.2d [79] at 84 [ (2d Cir. 1984) ];
 
 accord Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.,
 
 991 F.2d 141, 146 (4th Cir.1993) (citing with approval the
 
 Morelite
 
 standard as quoted in
 
 Apperson [v. Fleet Carrier Corp.],
 
 879 F.2d [1344] at 1358 [ (6th Cir.1989) ] (adopting
 
 Morelite
 
 standard);
 
 Austin South I, Ltd. v. Barton-Malow Co.,
 
 799 F.Supp. 1135, 1142 (M.D.Fla.1992) (applying
 
 Morelite
 
 standard);
 
 cf. Sunkist Soft Drinks v. Sunkist Growers,
 
 10 F.3d 753, 758 (11th Cir.1993),
 
 petition for cert, filed,
 
 63 USLW 3065 (July 6, 1994) (party alleging evident partiality must prove conduct creating ‘a reasonable appearance of bias’);
 
 Sheet Metal Workers Int’l Ass’n Local Union
 
 #
 
 120 v. Kinney Air Cond. Co.,
 
 756 F.2d 742, 745 (9th Cir.1985) (party alleging evident partiality must establish ‘a reasonable impression’ of partiality). ‘The alleged partiality must be “direct, definite, and capable of demonstration rather than remote, uncertain or speculative.” ’
 
 Peoples,
 
 991 F.2d at 146 (quoting
 
 Health Servs. Mgt. Corp. v. Hughes,
 
 975 F.2d 1253, 1264 (7th Cir.1992) (quoting
 
 Florasynth, Inc. v. Pickholz,
 
 750 F.2d 171, 173-74 (2d Cir.1984));
 
 see also Middlesex Mut. Ins. Co. v. Levine,
 
 675 F.2d 1197, 1202 (11th Cir.1982) (quoting
 
 Tamari v. Bache Halsey Stuart, Inc.,
 
 619 F.2d 1196, 1200 (7th Cir.),
 
 cert. denied,
 
 449 U.S. 873, 101 S.Ct. 213, 66 L.Ed.2d 93 (1980)). Moreover, the party asserting evident partiality ‘must establish specific facts that indicate improper motives on the part of the arbitrator.’
 
 Peoples,
 
 991 F.2d at 146.
 

 
 *387
 

 Hobet Mining,
 
 877 F.Supp. at 1018-19.
 

 In this case, the Kitchenses base their claim that the arbitrator exhibited partiality on his refusal to award what they believe would be adequate damages after explicitly finding in favor of the Kitchenses on their conversion claim. In support of their contention that the arbitrator’s action shows partiality justifying a reversal of his award of damages, the Kitchenses cite
 
 Ex parte Courtney,
 
 937 So.2d 1060 (Ala.2006), and
 
 Grimes v. Dodge,
 
 816 So.2d 53 (Ala.Civ.App.2001). In
 
 Courtney,
 
 our supreme court determined that the jury’s award of damages was inadequate based upon the amount of damages the plaintiff had proven at trial.
 
 Courtney,
 
 937 So.2d at 1064. In
 
 Grimes,
 
 this court reversed the jury’s award of damages because the jury had found the defendant liable for an accident in which the plaintiff was injured, but its award of damages did not include an amount at least as high as the amount proven by the plaintiffs uncontradicted evidence of damages.
 
 Grimes,
 
 816 So.2d at 56. Neither case is applicable to the issue whether an arbitrator exhibited partiality in calculating punitive damages.
 

 An arbitrator’s ultimate determination as to the amount of damages to be awarded in a given case cannot be the basis of a showing that the arbitrator exhibited partiality, that is, that the arbitrator was biased in favor of one party. In every case, an arbitrator will decide for one party or the other, but that decision does not demonstrate evident partiality or bias on the part of the arbitrator. Other than the arbitrator’s determination of the amount of punitive damages to award to them, the Kitchenses fail to identify conduct on the part of the arbitrator that could be construed as bias or partiality to one party over the other. For example, there is no contention that the arbitrator had a conflict or an interest in the outcome of the arbitration.
 

 Similarly, the Kitchenses fail to identify any misconduct or misbehavior by the arbitrator that prejudiced their rights in violation of § 10(a)(3), other than their assertion that the arbitrator awarded the Kitchenses what they believed were inadequate damages. There is no contention that the arbitrator failed to give the Kitchenses a fair hearing, improperly limited discovery, improperly excluded or included evidence, or otherwise acted in a way that could be construed as misconduct.
 
 See, e.g., Rosensweig v. Morgan Stanley & Co.,
 
 494 F.3d 1328, 1333-34 (11th Cir.2007). Again, merely because an arbitrator reaches an ultimate decision with which one of the parties disagrees does not demonstrate misconduct. Otherwise, an arbitrator would be open to allegations of misconduct or impartiality and bias every time he or she decided a case. We conclude that the Kitchenses have failed to demonstrate that any of the grounds for vacatur of the arbitration award under § 10 of the FAA are present in this case.
 

 In addition to the grounds for vacatur enumerated in § 10 of the FAA, the Kiteh-enses contend that the award also may be vacated if the arbitrator acted in manifest disregard of the law. Our supreme court has already decided this issue adversely to the Kitchenses.
 

 “In March of last year, the Supreme Court of the United States, in
 
 Hall Street Associates, L.L.C. v. Mattel, Inc.,
 
 [552 U.S. 576 (2008) ], rejected the conclusion that it had adopted manifest disregard of the law as an additional, nonstatutory ground for relief from an arbitrator’s decision. The Supreme
 
 *388
 
 Court stated that such a reading was ‘too much for
 
 Wilko [v. Swan,
 
 346 U.S. 427 (1953),] to bear’ and that the text of the Federal Arbitration Act ‘compels a reading of the § 10 and § 11 categories [of relief] as exclusive.’ 552 U.S. at [585], 128 S.Ct. at 1404.
 
 [1]
 
 Under the Supreme Court’s decision in
 
 Hall Street Associates,
 
 therefore, manifest disregard of the law is no longer an independent and proper basis under the Federal Arbitration Act for vacating, modifying, or correcting an arbitrator’s award. In light of the fact that the Federal Arbitration Act is federal law, and in light of the Supremacy Clause of the Constitution of the United States, Art. VI, we hereby overrule our earlier statement in
 
 Birmingham News Co. [v. Horn,
 
 901 So.2d 27 (Ala.2004),] that manifest disregard of the law is a ground for vacating, modifying, or correcting an arbitrator’s award under the Federal Arbitration Act, and we also overrule any such language in our other cases construing federal arbitration law.
 

 Hereford v. D.R. Horton, Inc.,
 
 13 So.3d 375, 380-81 (Ala.2009) (containing a discussion on the evolution of “manifest disregard of the law” as a ground for vacating an arbitration award). Subsequently, in
 
 Volvo Trucks North America, Inc. v. Dolphin Line, Inc.,
 
 50 So.3d 1050, 1053 (Ala.2010), and
 
 Raymond James Financial Services, Inc. v. Honea,
 
 55 So.3d at 1166, our supreme court reiterated its holding that,
 
 post-Hall Street,
 
 the specific grounds enumerated in § 10 of the FAA are the only grounds upon which an arbitration award may be vacated under the FAA.
 

 As to whether the manifest-disregard-of-the-law standard applies to arbitration awards governed by the AAA, our supreme court has held that,
 

 “when viewed in its entirety, this Court’s decision in
 
 Birmingham News [Co. v. Horn,
 
 901 So.2d 27 (Ala.2004),] may not be read to adopt the manifest-disregard-of-law standard with respect to cases governed by the AAA. Furthermore, the standards stated in § 6-6-14[
 
 3
 
 ] are exclusive, and this Court has no authori
 
 *389
 
 ty to rewrite the statute to embrace the broader standard of manifest disregard of the law. See, e.g.,
 
 Wal-Mart Stores, Inc. v. Patterson,
 
 816 So.2d 1, 6 (Ala.2001) (‘The Court is not at liberty to rewrite statutes,
 
 Reed v. Board of Trustees for Alabama State Univ.,
 
 778 So.2d 791, 794 (Ala.2000), or “to substitute its judgment for that of the Legislature.”
 
 Baptist Health Sys., Inc. v. City of Midfield,
 
 792 So.2d 1095, 1097 (Ala.2001) (internal quotations omitted).’).”
 

 Volvo Trucks,
 
 50 So.3d at 1054-55.
 

 Despite the Kitchenses assertions to the contrary, our supreme court has made clear that manifest disregard of the law is not a proper basis on which to vacate an arbitration award. Although the trial court had reservations about the calculation of punitive awards based only upon the interest accrued during the time Turquoise Properties wrongfully withheld the 5% excess, we conclude that the trial court correctly determined that it did not have a legal basis to set aside the arbitration award.
 

 Thus, for the reasons discussed above, we affirm the trial court’s judgment insofar as it refused to set aside the arbitrator’s award and to award the Kitchenses the amount of damages to which they believed they were entitled.
 

 Turquoise Properties’ Cross-Appeal
 

 Turquoise Properties cross-appealed from the trial court’s judgment insofar as it increased the amount of punitive damages awarded by one-third. The trial court agreed with the Kitchenses that the arbitrator had miscalculated the amount of punitive damages he had awarded, and it modified the award to reflect a 3:1 ratio of punitive damages to compensatory damages rather that the 2:1 ratio the arbitrator awarded.
 
 [4]
 
 The Kitchenses argued to the trial court that the arbitrator’s award of punitive damages was due to be modified pursuant to § 11 of the FAA, which allows a court to modify or correct an arbitration award upon the application of any party to the arbitration “[w]here there was an evident material miscalculation of figures” or “[w]here the award is imperfect in matter of form not affecting the merits of the controversy.” 9 U.S.C. § 11(a) and (c). In support of their argument for modification of the damages award, the Kitchenses cited language in the arbitrator’s order, which says: “The Arbitrator agrees that a 3:1 ratio for punitive damages is not excessive.” That statement, they say, required the arbitrator to award punitive damages at a ratio of 3:1 rather than at a ratio of 2:1.
 

 Turquoise Properties argues that the trial court did not have the authority to modify the amount of punitive damages awarded. It contends that the statement the Kitchenses rely on was merely a statement of opinion indicating that the maximum amount of punitive damages would not be excessive, but it asserts, the arbitrator chose not to award the maximum amount. It claims that there is no evident miscalculation in the amount of the award and that, thus, the trial court lacked the authority to modify the amount of damages awarded to the Kitchenses.
 

 “[R]elief under Section 11(a) [of the FAA) is limited to ‘simple formal, descriptive, or mathematical mistake,’
 
 Stroh Container Co. v. Delphi Industries, Inc.,
 
 783 F.2d 743, 749 (8th Cir. 1986), not disagreement over factual or legal decisions deliberately made. Most cases discussing Section 11(a) address
 
 *390
 
 the alleged miscalculation of figures. These cases make clear that the provision reaches only computational errors, not legal or factual mistakes concerning the amount of damages that should be awarded.
 
 E.g., Grain v. Trinity Health, Mercy Health Services Inc.,
 
 551 F.3d 374, 378-79 (6th Cir.2008) (error in determining start and stop dates for interest is not correctable under Section 11(a));
 
 U.S. Energy Corp. v. Nukem, Inc.,
 
 [(No. 96-1532, Oct. 22, 1998)] (10th Cir.1998) (flawed logic in the award of lost profits is not correctable under Section 11(a));
 
 UHC Management Co. v. Computer Sciences Corp.,
 
 148 F.3d 992, 998 (8th Cir.1998) (damages award inconsistent with governing state law is not correctable under Section 11(a));
 
 see also B.L. Harbert International, LLC v. Hercules Steel Co.,
 
 441 F.3d 905, 909 (11th Cir.2006) (Section 11(a) can be used to correct scrivener’s errors in stating the damages awarded). Simply put, Section 11(a) does not apply to ‘an interpretation of the law and facts as [the arbitrator] saw them.’
 
 Capital Wholesale Electric, Inc. v. McCarthy Construction,
 
 [ (No. 93-16578, March 9, 1995) ] (9th Cir.1995);
 
 accord Apex Plumbing Supply, Inc. v. U.S. Supply Co.,
 
 142 F.3d 188, 194 (4th Cir.1998) (‘[C]ourts have held generally that even a mistake of fact or misinterpretation of law by an arbitrator provides insufficient grounds for the modification of an award’ under Section 11(a)).”
 

 Waddell v. Holiday Isle, LLC
 
 (Civil Action No. 09-0040-WS-M, Aug. 4, 2009) (S.D.Ala.2009) (not published in F.Supp.3d).
 

 We do not read the arbitrator’s order as requiring an award of punitive damages at a ratio of 3:1 rather than 2:1, and we cannot conclude that the arbitrator miscalculated the amount of damages to award the Kitchenses. As previously mentioned, the award of punitive damages is within the discretion of the finder of fact, which, in this case, was the arbitrator.
 
 Flint Constr. Co. v. Hall,
 
 904 So.2d at 254. The arbitrator was not required to award the Kitchenses any punitive damages. However, in addition to the 5% excess plus interest, the arbitrator specifically awarded Morgan and Blake Kitchens an additional $10,808.10 each and Kitchens Properties an additional $10,943.10. We cannot say that those awards were the basis of computational errors.
 

 Accordingly, the trial court did not have authority pursuant to § 11 of the FAA to modify the arbitrator’s award. That portion of the judgment of the trial court modifying the amount of punitive damages awarded to the Kitchenses is reversed. For the reasons set forth above, the remainder of the trial court’s judgment refusing to vacate the arbitrator’s award is affirmed.
 

 APPEAL — AFFIRMED.
 

 CROSS-APPEAL — REVERSED AND REMANDED.
 

 PITTMAN, BRYAN, THOMAS, and MOORE, JJ., concur.
 

 [1]
 

 . From the case action summary, it appears that on February 2, 2010, the Kitchenses' conversion claim against U.S. Bank was dismissed.
 

 [2]
 

 . In its initial brief on appeal, Turquoise Properties argues that in asking for compensatory damages in the amount of the
 
 5%
 
 excess that was returned to them on June 22, 2009, the Kitchenses are seeking a double recovery of that amount. However, in the Kitchenses' reply brief, they make clear that they are not seeking a double recovery of the 5% excess; they are arguing only that the $180,885 that was returned to them after the arbitrator entered his interim order should be considered compensatory damages for the purpose of calculating punitive damages.
 

 [7]
 

 "7 The 'reasonable person’ standard requires a showing of something more than the
 
 *387
 
 'appearance of bias,’ but not the 'insurmountable' standard of 'proof of actual bias.’
 
 Mor-elite,
 
 748 F.2d at 84.”
 

 [1]
 

 "1 The Supreme Court noted that the use of the phrase 'manifest disregard' in
 
 Wilko
 
 was particularly vague and that it could have had several possible meanings. The Court surmised that the use of the phrase 'manifest disregard,’ instead of intending to create ‘a new ground for review,' may merely have 'referred to the § 10 grounds collectively, rather than adding to them.... Or, as some courts have thought, "manifest disregard” may have been shorthand for § 10(a)(3) or § 10(a)(4), authorizing vacatur when the arbitrators were "guilty of misconduct” or "exceeded their powers.” ’
 
 Hall Street Associates,
 
 552 U.S. at [585], 128 S.Ct. at 1404. Relying on these latter two possible meanings, some courts have held that 'manifest disregard’ survives as a judicial gloss on the specific grounds for vacatur listed in § 10 of the Federal Arbitration Act.
 
 See Stolt-Niel-sen
 
 SA
 
 v. AnimalFeeds Int’l Corp.,
 
 548 F.3d 85, 94 (2d Cir.2008) (citing with approval decisions of other courts that have held that ‘manifest disregard’ survives as a gloss on the § 10(a) grounds of the Federal Arbitration Act). We do not address whether manifest disregard of the law remains as a judicial gloss on the grounds specified in § 10(a) of the Federal Arbitration Act or is merely 'shorthand for § 10(a)(3) or § 10(a)(4).’ We simply note that by the express language of the Supreme Court of the United States the text of the Federal Arbitration Act ‘compels a reading of the § 10 and § 11 categories [of relief] as exclusive.' 552 U.S. at [585], 128 S.Ct. at 1404.”
 

 [3]
 

 . Section 6-6-14 of the AAA provides:
 

 "An award made substantially in compliance with the provisions of this division is conclusive between the parties thereto and their privies as to the matter submitted and cannot be inquired into or impeached for want of form or for irregularity if the award determines the matter or controversy submitted, and such award is final, unless the arbitrators are guilty of fraud, partiality, or corruption in making it.”
 

 [4]
 

 . The arbitrator’s award of punitive damages of $10,808.10 to both Morgan and Blake and of $10,943.10 to Kitchens Properties reflects a 2:1 ratio of punitive damages to the interest accrued on the 5% excess during the time it was improperly withheld.